THE WILMINGTON CITY RAILWAY COMPANY, a corporation of the State of Delaware, defendant below, plaintiff in error, *vs.* ELLEN J. TRUMAN and MARY ROBERTS, Executrices of Philip Lynch, deceased, plaintiffs below, defendants in error.

*Personal Injuries—Damages—Negligence—Contributory Negligence—Evidence; Preponderance; Greater Weight of —Street Railway—Writ of Error—Position of Danger —Question for Jury.*

1. A person approaching a railway crossing, with which he is familiar, is bound to avail himself of his knowledge of the locality and act accordingly. If, as he attempts to cross the tracks, his line of vision is obstructed, he is bound to look for approaching cars in time to avoid collision; and if he does not look, and for that reason does not see an approaching car until it is too late to avoid the collision, he is guilty of negligence, and cannot recover.

2. It is also a principle of law that if a person move from a position of safety to a position of danger, near or upon the tracks upon which a car is running, so suddenly as to make it impossible for the motorman to stop the car before the collision, the company cannot be held liable for the resultant injury.

3. But if the motorman sees, or by the exercise of reasonable care could have seen, the person injured in a position of danger upon the tracks, it is his duty to do everything that a reasonably careful and prudent man would do under like circumstances to avoid the accident. In other words, even though a person be negligently upon the tracks, a motorman may not run him down.

4. When the motorman sees a traveler, two or three car lengths away, cross the tracks and stop about 18 inches from the rail, and as the car approaches the spot the traveler steps backward and is struck by the car, it cannot be said to be a case where the injured person, being in a position of safety, so suddenly placed himself in the way of the car as to make it impossible for the motorman to avoid the accident.

5. The Court could not say that the motorman was negligent in running his car as he did at the time of the accident, neither could it say the deceased was not negligent when he made the step backward toward the track; but it was a question for the jury to determine whether the motorman was negligent, and, if he was, whether the defendant was released from liability on account of contributory negligence upon the part of the person injured.

6. The Court below charged the jury as follows: "In civil cases the determination of the jury should be in favor of that party for whom is the

preponderance or greater weight of the evidence," without explaining what was meant by the "preponderance" or "greater weight of the evidence;" *held* that the instruction given was a correct statement of the law, couched in the language usually employed in charging the jury in such cases,—the record not showing that there was any request by the defendant to explain the meaning of the words referred to; *held* also that this Court cannot assume that the jury did not understand the Court's instruction.

(*January* 19, 1909.)

NICHOLSON, CH., LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*Walter H. Hayes* and *Andrew C. Gray* for plaintiff in error.

*Edwin R. Cochran, Jr.*, and *Sylvester D. Townsend, Jr.*, for defendants in error.

Supreme Court, January Term, 1909.

WRIT OF ERROR (No.     June Term, 1908) to the Superior Court for New Castle County.

PENNEWILL, J., delivering the opinion of the Court:

This action was brought in the Court below by Philip Lynch in his lifetime to recover damages for personal injuries alleged to have been caused by the negligence of the plaintiff in error. Subsequently Philip Lynch died, and letters of administraiton were granted on his estate to the defendants in error, who were made parties plaintiff in the action.

Plaintiffs below in the trial of the cause relied entirely on the allegations of negligence contained in the first and second counts of the declaration.

In the first count it is averred that on the thirtieth day of April, 1906, in the City of Wilmington, the defendant company negligently and carelessly ran and operated a certain car propelled by electricity, over and along certain railway tracks,and through a portion of said City, at a speed greater than it was

authorized to do by law, to wit, at a speed of upwards of seven miles an hour, and thereby and by means of the negligence and carelessness aforesaid, the said electric car ran into and over the said Philip Lynch while he was lawfully crossing said railway tracks on Maryland Avenue near Chandler Street in said City.

In the second count it is alleged that the said Philip Lynch was lawfully upon or crossing the tracks of the defendant company at a public crossing on Maryland Avenue at or near Chandler Street, and that the said defendant then and there negligently and carelessly failed to properly warn the said Philip Lynch of the approach and movement of the car by gong, bell or otherwise, and otherwise so negligently and carelessly operated the said car that by and through the negligence and carelessness aforesaid the car was violently driven and struck the said Philip Lynch.

The negligence relied upon by the plaintiffs below, therefore, was *first*, excessive and unlawful speed; and *second*, failure to warn the deceased of the approach of the car.

The testimony as to both the speed of the car, and the ringing of the bell, at and just before the time of the accident, is conflicting. There is evidence on the part of the plaintiffs showing that the car was being run at a speed of from eight to ten miles an hour, and that the bell did not ring; while witnesses for the defendant testified that the speed of the car did not exceed five or six miles an hour, and that the bell did ring.

The plaintiff in error, however, claims that it is immaterial what may have been the speed of the car, or whether any notice of its approach was given by bell or otherwise, because there was no evidence submitted which tended to show that either the speed of the car or the failure to ring the bell was the cause of the accident, or contributed in anywise thereto. It is insisted that the Court below should have directed the jury to return a verdict in favor of the defendant.

The principal question raised by the assignment of error, and to be determined by this Court, is whether the Court below erred in refusing to so direct the jury.

In order to determine this question it will be necessary to review the evidence submitted at the trial.

There were but two witnesses who saw the accident, and one of those testifying for the plaintiffs, said the right-hand corner of the car struck his father, and that the first he saw of his father or the car was at the instant of the collision.

The other witness was the motorman who was operating the car. His testimony was substantially as follows: As I approached Chandler Street I noticed, probably a square from Chandler Street, a team coming down on the other track, coming in town; as I got within I guess one-third of a square, or three or four car lengths or something like that from this wagon, as I always do I rang the bell to keep the team from turning in towards the front of the car. I got my car under control, tightened up on the brakes and brought it down to a reasonable speed. As I got a couple more car-lengths towards Chandler Street I saw a man walk out from behind the wagon and begin to walk across the street, and I commenced to slow down the car. I should say the car was then about two or probably three car-lengths from him. He was going across the track in a westerly direction, and when he was eighteen inches or two feet clear of the track so that the car would have cleared him if he had stayed there, I released the brake a little and started to continue past him. When I got within—well, the fender was a few feet from him, the man glanced around. He looked in town then, north I guess, and saw a team about the back end of the car going in the same direction that I was, not on the tracks but on the outside of the track, and on the west side of Maryland Avenue between the track and the curb. He looked towards the team and stepped back within about six or eight inches of the rail, and the horse's head was then about a car-length from him. When he gave the step back the front of the car was distant from him a little more than the distance from the front of the fender to the body of the car. I then did everything in my power, I put on the brakes just as hard as I possibly could, and rang the bell from the time I first saw him until he was struck by the car. When the

man stepped about eighteen inches or two feet clear of or over the track I thought I could clear him and went on.   The part of the car that struck him was the right-hand rail in the dash-board of the car.   The reason I loosened up my brakes was because I thought the man would either stay where he was or keep across the street.   I thought that a man who was looking right direct at the car like he was would not step directly back in front of the car.   I judged that he was sensible enough to be on the street and had sense enough to keep on across the street.

The important and vital question seems to be this:   When the motorman plainly saw the deceased crossing the tracks two or three car-lengths in front of him, and had taken the precaution to tighten his brakes, slow down the car and get it under control, was it negligence on his part to loosen his brakes and continue at a greater speed, when the deceased, had barely cleared the tracks and stopped.

It appears from the testimony of the motorman that the side of the car extended over the track about six or eight inches, so we may assume that if the deceased had remained where he stopped the car could not have cleared him more than about twelve inches.   Could it have been said, therefore, by the Court below that he was practically in a position of safety when the motorman increased the speed of the car?

It is true the testimony discloses that there was a clear and unobstructed view of the approaching car from the place where Lynch stood, that he was familiar with the crossing, and was looking in the direction of the car as it came towards him.   And it is unquestioned law in this State that a person approaching a railway crossing with which he is familiar is bound to avail himself of his knowledge of the locality and act accordingly.   If, as he attempts to cross the tracks, his line of vision is unobstructed, he is bound to look for approaching cars in time to avoid collision; and if he does not look, and for that reason does not see an approaching car until it is too late to avoid the collision, he is guilty of negligence and cannot recover.

It is also a well-settled principle of law that if a person moves from a position of safety to a position of danger near or upon the tracks upon which a car is running, so suddenly as to make it impossible for the motorman to stop the car before the collision, the company cannot be held liable for the resultant injury.

But there is another principle of law equally well-settled in this State, which is, that if the motorman sees, or by the exercise of reasonable care could have seen the person injured in a position of danger upon the tracks, it is his duty to do everything that a reasonably careful and prudent man would do under like circumstances to avoid the accident. If he fails to perform this duty and injury results therefrom, he is guilty of negligence. In other words, even though a person be negligently upon the tracks, a motorman may not run him down, but must do all that he reasonably can do to avoid injuring him.

Applying these principles to the present case, the crucial question to be determined, in the light of the testimony adduced, is whether Lynch was in a position of safety or danger at the time the motorman loosened his brakes and ran his car towards him at a rate of speed which some of the witnesses testified was as great as eight or ten miles an hour.

It cannot be said to be clearly a case where the deceased, being in a position of safety, so suddenly placed himself in the way of a car as to make it impossible for the motorman to avoid the accident. The motorman admits that he saw him upon the tracks and held his car at a very low rate of speed until he thought that the danger was passed. But was the danger passed, and had the motorman a right to assume that he could safely pass Lynch while standing so near the track, watching a team that was approaching? The motorman testified that Lynch had stopped and was looking at the team, which was moving along with the car.

We do not say that the motorman was negligent in running his car as he did at the time of the accident, neither do we say the deceased was not negligent when he made the step backward toward the track; but we are clearly of the opinion that it was a

## WIL. CITY RY. vs. LYNCH'S EXECUTRICES.   203

OPINION.

question for the jury to determine under all the facts, conditions and circumstances existing at the time, and disclosed by the testimony, whether the motorman was negligent, and if he was, whether the defendant was released from liability on account of contributory negligence on the part of the deceased.

It is also assigned as error that the Court instructed the jury as follows: "In civil cases the determination of the jury should be in favor of that party for whom is the preponderance or greater weight of the evidence," without explaining what was meant by the "preponderance" or "greater weight of the evidence."

It is argued by the plaintiff in error that such an instruction, unexplained, might have led the jury to infer that the "preponderance" or "greater weight of the evidence" might mean the number of witnesses.

But little reliance we think was placed upon this point in the argument, and indeed it was admitted that it would be impossible to say whether the jury drew such an inference.

The instruction given by the Court was a correct statement of the law, couched in the language usually employed in charging the jury in such cases,---the record not showing that there was any request by the defendant company to explain the meaning of the words referred to. And, moreover, it is manifest that this Court cannot assume that the jury did not understand the Court's instruction.

We find no error in the record of the proceedings below, and the judgment of the Court is therefore affirmed.