[No. 10689.  Department Two.  August 27, 1913.]

FRED HERRICK, *Respondent*, v. WASHINGTON WATER POWER
COMPANY, *Appellant*.[1]

TRIAL—INSTRUCTIONS—ISSUES WITHDRAWN.  The question of the
negligence of a motorman, in failing to discover an intoxicated per-
son on the street car tracks, was not intended to be withdrawn from
the jury by remarks of the trial judge, in ruling upon defendant's
motion to withdraw all allegations of negligence save that of the
failure to observe the rule of last clear chance, that his judgment
was that the plaintiff can submit the question whether the motorman
saw the man in time to avoid the injury, and if so, whether he used
due care to stop the car as soon as he could, whereupon defendant
consented that those two propositions be submitted, where defend-
ant's motion was expressly directed to the elimination of allegations
of excessive speed, defective brakes, insufficient headlights and in-
sufficient fender, and defendant afterwards introduced evidence to
establish that the motorman could not, in the exercise of an ordinary
care by a proper lookout, have discovered the plaintiff on the track
in time to avoid the injury; and it was not error for the court to in-
struct the jury as to care in keeping a lookout.

NEGLIGENCE—LAST CLEAR CHANCE—CONTRIBUTORY NEGLIGENCE—IN-
STRUCTIONS—ISSUES TO BE SUBMITTED.  In an action for personal in-
juries, where all charges of negligence on the defendant's part have
been withdrawn, save that of a failure to avail itself of the last clear
chance to avoid the injury, the defense of contributory negligence
may be withdrawn from the consideration of the jury.

STREET RAILROADS—INJURIES TO PERSONS ON TRACKS—LAST CLEAR
CHANCE—CONTRIBUTORY NEGLIGENCE—EFFECT. Negligence of a motor-
man in failing to observe plaintiff in an intoxicated condition on the
track in time to avoid an injury is sufficient to invoke the rule of
the "last clear chance," if the negligence of the defendant continued
after the negligence of the plaintiff had ceased or culminated in a
dangerous position which he could not escape and which reasonable
care would have revealed in time to have avoided the injury.

SAME—CONTRIBUTORY NEGLIGENCE—DRUNKENNESS—CULMINATION—
LAST CLEAR CHANCE.  Negligence arising from drunkenness cul-
minates with insensibility, so that plaintiff, drunk to insensibility
and lying upon a street car track, may invoke the rule of last clear
chance, rendering the company liable if the motorman, by the exer-

[1]Reported in 134 Pac. 934.

cise of reasonable care, should have discovered his position in time to have stopped the car and avoided the injury; since plaintiff's negligence had terminated and did not concur with the negligence of the motorman.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered March 18, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a pedestrian run over by a street car. Affirmed.

*Post, Avery & Higgins,* for appellant, cited: *Vizacchero v. Rhode Island Co.,* 26 R. I. 392, 59 Atl. 105, 69 L. R. A. 188; *Conrad v. Graham & Co.,* 54 Wash. 641, 103 Pac. 1122, 132 Am. St. 1137; *Tucker's Adm'r v. Norfolk & W. R. Co.,* 92 Va. 549, 24 S. E. 229; *Dyerson v. Union Pac. R. Co.,* 74 Kan. 528, 87 Pac. 680, 7 L. R. A. (N. S.) 132, and ·note; *Texas & N. O. R. Co. v. McDonald,* 99 Tex. 207, 88 S. W. 201; *Little Rock R. & Elec. Co. v. Billings,* 187 Fed. 960; *Chunn v. City & Suburban R. of Washington,* 207 U. S. 302; *Marple v. Topeka R. Co.,* 85 Kan. 699, 118 Pac. 690; *Johnson v. Stewart,* 62 Ark. 164, 34 S. W. 889; *Hot Springs St. R. Co. v. Johnson,* 64 Ark. 420, 42 S. W. 833; *Taylor v. Houston Elec. Co.,* 38 Tex. Civ. App. 432, 85 S. W. 1019; *Schoenholtz v. Third Avenue R. Co.,* 16 Misc. Rep. 7, 37 N. Y. Supp. 682; *Fluhart v. Seattle Elec. Co.,* 65 Wash. 291, 118 Pac. 51; *Woolf v. Washington R. & Nav. Co.,* 37 Wash. 491, 79 Pac. 997; *St. Louis & S. F. R. Co. v. Schumacher,* 152 U. S. 77; *Illinois Cent. R. Co. v. Ackerman,* 144 Fed. 959; *Bennichsen v. Market St. R. Co.,* 149 Cal. 18, 84 Pac. 420; *Rider v. Syracuse Rapid Transit R. Co.,* 171 N. Y. 139, 63 N. E. 836, 58 L. R. A. 125; *Chicago, R. I. & P. R. Co. v. Crisman,* 19 Colo. 30, 34 Pac. 286; *Denver & R. G. R. Co. v. Spencer,* 25 Colo. 9, 52 Pac. 211; *Alger, Smith & Co. v. Duluth-Superior Traction Co.,* 93 Minn. 314, 101 N. W. 298; *Missouri Pac. R. Co. v. Moseley,* 57 Fed. 921; *Denver City*

*Tramway Co. v. Cobb*, 164 Fed. 41; *Kramer v. New Orleans City & L. R. Co.*, 51 La. Ann. 1689, 26 South. 411.

*W. H. Plummer* and *Henry Jackson Darby*, for respondent.

ELLIS, J.—This is an action for personal injuries, sustained by the plaintiff by being run over by one of the defendant's street cars. The facts material to the discussion are as follows. The defendant owns and operates a double track street car line on Front avenue, in the city of Spokane, which runs east and west. On August 1, 1911, at about one o'clock in the morning, the plaintiff was lying upon Front avenue, between Market street and Division street, at a point estimated by different witnesses at from 50 to 150 feet east of Division street, which crosses Front avenue at a right angle, with his body between the two tracks and his right leg across the south rail of the north track. While he was in that position, one of the defendant's cars, running west on the north track, ran over his right leg near the foot, so injuring it as to require amputation about eight inches below the knee. The car had made a safety stop at Market street, where the tracks of another company crossed the defendant's tracks, and after crossing Market street the power was thrown off and the car allowed to drift down a slight grade toward Division street. There was evidence strongly tending to show that the plaintiff was intoxicated to the point of unconsciousness. He was admittedly unconscious when run over, and nearly every witness who came near him at that time and at the emergency hospital testified to a strong odor of intoxicants. There was also evidence that he was addicted to drink. The plaintiff testified that he had taken only two glasses of beer, one of which was taken shortly before he started to the place of the accident to take a street car, that he became dizzy and sick, and he suspected that somebody had drugged the beer.

The evidence shows that the motorman was experienced, and he testified that he did everything in his power to stop the car

after he saw the body on the track and appreciated that it was a human being. The car and its equipment was in proper condition, and the headlight was of the best type in ordinary use. The motorman testified that the car was 15 or 20 feet from the man when he first saw him, and the car ran 25 or 30 feet before it was stopped. The defendant introduced evidence, based on experiments, tending to show that, with the street lights in the condition that they were on the night in question, objects placed upon the track could not be distinguished from shadows beyond a distance of 30 or 40 feet. The plaintiff introduced evidence, based on observation by the witnesses, tending to show that the rails of the track were on such a night visible and shining for more than a block, and that any object placed thereon would be easily discernible for about that distance. There was an arc light at the intersection of Division street and Front avenue, which the defendant's evidence tended to show illuminated the ground to a distance of 40 to 45 feet, and which the plaintiff's evidence tended to show cast an illumination to a distance of about 80 feet.

The evidence also showed that a headlight, such as that on the car in question, threw a light for a distance of 30 to 40 feet, the defendant's evidence being to the effect that with such a light a motorman could see an object on the track 30 feet in advance so as to realize what it was. An expert witness for the defendant testified that a car running 10 miles an hour can be stopped in from 50 to 60 feet by using the air brake; if running eight miles an hour, in from 45 to 50 feet; and running six miles an hour, in about 40 feet. The testimony of the various witnesses tended to show that the car at the time of the accident, was running at a rate of from six to ten miles an hour. The motorman was the only eyewitness of the accident, saving one May, a hotel bellboy, who testified that he was going home at one o'clock on the night in question, and when about ten feet south of the southwest corner of Division street and Front avenue, saw the plaintiff lying on the track about fifty feet east of the crossing track of

Division street and Front avenue, and at the same time saw the street car running west on the north track at a distance of about 82 steps or about 130 feet from the plaintiff. One of the passengers on the car testified that, immediately after the accident, the motorman said he did not see the plaintiff "until the fender was just right over him." The conductor testified that the motorman said, " 'I didn't see him until we were almost on to him,' or words to that effect." The negligence charged in the complaint was unsafe fenders, insufficient brakes, insufficient headlight, operating the car at a dangerous rate of speed contrary to the city ordinance, and

"The failure on the part of the agents and servants of said defendant to use reasonable care and caution to observe plaintiff lying upon said track a reasonable time before the car arrived at the place where plaintiff was lying and within which distance said car should have been and could have been, in the exercise of reasonable care, stopped before injuring plaintiff, and after it discovered plaintiff's perilous position, did not use reasonable care to avert injuring him. The negligence and carelessness on the part of defendant in not taking reasonable care and precaution not to injure plaintiff after he was placed in a perilous position."

The answer admitted the position of the plaintiff upon the track, denied all the allegations of negligence, and set up the affirmative defense of contributory negligence, which defense was traversed by the reply. The jury returned a verdict for the plaintiff for $4,500. The defendant moved for judgment notwithstanding the verdict and for a new trial, which motions were denied. Judgment was entered on the verdict. The defendant appealed.

At the close of respondent's evidence, the appellant moved the court to withdraw from the consideration of the jury all of the allegations of negligence save that of the charge of failure to observe the rule of last clear chance above quoted. Counsel for the respondent consented to the withdrawal, and the court said:

"My judgment in this case is, that all that the plaintiff can submit to the jury, is the question whether the motorman saw this man in time in his condition, lying on the track there —in time to avoid injuring him by the exercise of ordinary care and diligence, and if, after he did see him, he exercised ordinary care in attempting to stop the car as soon as he could."

To which counsel for respondent answered, "We consent that the case may be submitted on these two propositions."

The appellant contends that the court thus withdrew from the consideration of the jury every question save failure to use reasonable care to avert injury to the respondent after he was actually seen by the motorman, and that the court, therefore, erred in instructing the jury to the effect that the appellant would be guilty of negligence if the motorman saw, or by the exercise of reasonable care might have seen, the respondent on the track in time, by the exercise of ordinary care, to have avoided running over him. It is manifest from this instruction that the court did not intend in the colloquy above quoted to limit the appellant's liability to negligence after the actual discovery of the respondent's peril. It is also clear that the appellant's motion was not intended to so limit the issues, since it was directed expressly to the allegations of excessive speed, defective brakes, insufficient headlights, and insufficient apron, pilot or fender. These were all the allegations to which the appellant's motion was directed, and to which respondent's counsel apparently intended to consent. This is further made apparent by a reading of the appellant's evidence thereafter introduced, much of which was intended to show that the motorman could not, in the exercise of ordinary care by a proper lookout, have discovered the respondent on the track in time to avoid the injury. If it had been clearly understood that the court had withdrawn every allegation of negligence from the jury save lack of reasonable care after the actual discovery of respondent's peril, all of this evidence would have been immaterial. We think it plain,

therefore, that neither the court nor the parties intended to so limit the charges of negligence, and that the court did not err in giving the broader instruction, if it stated correctly the rule of last clear chance.

The court gave the following instructions:

"Ordinary care is such a degree of care as an ordinarily prudent person would exercise under similar circumstances and conditions. The failure to exercise such a degree of care is negligence. The court instructs you that all the allegations of negligence set up in plaintiff's complaint have been eliminated from this case, except the following  .  .  .

" 'The failure on the part of the agents and servants of said defendant to use reasonable care and caution to observe plaintiff lying upon said track a reasonable time before the car arrived at the place where plaintiff was lying, and within which distance said car should have been and could have been, in the exercise of reasonable care, stopped before injuring plaintiff, and after it discovered plaintiff's perilous position, did not use reasonable care to avert injuring him.'

"Therefore you will not consider any of the allegations of negligence contained in section 4 of the amended complaint nor in the first, second, third and fourth paragraphs of section 5 of the amended complaint, nor the defense of contributory negligence set up in defendant's answer, in arriving at your verdict."

"You are instructed that if you find in this case that plaintiff was lying upon the defendant's track, as alleged, in an unconscious condition, it is immaterial whether such unconscious condition was brought about by intoxication or from some other cause, and that the duty of defendant's motorman to avoid injuring the plaintiff would be the same irrespective of the cause which might have brought about plaintiff's unconscious condition.

"A motorman of the defendant company, in operating a street car, has a right to presume that no person will lie down or be lying upon the track in an intoxicated or unconscious condition, and while it is his duty to keep a reasonable outlook for persons on the track in front of him, he is not bound to continually observe the track; he must also observe the appliances on the car which he is required to handle, and use reasonable care to observe vehicles, pedestrians and other cars.

If, however, he sees, or by the exercise of reasonable care ought to have seen, a person upon the track in front of him in an unconscious condition, it then becomes his duty to exercise ordinary care and diligence to prevent injury to such person. No ironclad rule can be laid down as to the duties of the motorman in this regard, further than to say that he is bound to use such care as an ordinary, reasonably prudent person, placed as he was placed at the time and surrounded by the circumstances with which he was surrounded, would exercise."

"If you find from the evidence in this case that defendant's motorman, who was operating the car in question, saw, or by the exercise of ordinary care ought to have seen, the plaintiff lying upon the track of the defendant in front of him, as alleged in time, by the exercise of ordinary care and diligence on his part, to have prevented the car from running over or striking him, then the court instructs you that the motorman was guilty of negligence, and the plaintiff will be entitled to recover, if you find that such negligence was the proximate cause of the injury complained of."

It is urged that these instructions were erroneous in that they improperly took from the jury the defense of contributory negligence, and in that they improperly stated the rule of "last clear chance." The rule of last clear chance is an exception to the general rule that concurring negligence of both plaintiff and the defendant will preclude a recovery because the plaintiff's negligence contributed to the injury. It is not intended to permit a recovery in spite of the plaintiff's negligence, but relieves that negligence of its contributory character in cases where, by reason of the defendant having the last clear chance to avoid the injury, his negligence in not using reasonable care to avoid it is the proximate or efficient cause of the injury, while the negligence of the plaintiff is only a remote cause, condition or incident. It is obvious, therefore, that where, as here, the charges of negligence on the defendant's part have been withdrawn, save that of a failure to avail itself of the last clear chance to avoid the injury, the trial judge is justified in eliminating the defense of contributory negligence from the consideration of the jury.

The appellant recognizes this fact, and frankly admits that the trial court would have been justified in eliminating the defense of contributory negligence if he had limited the negligence for which the appellant would be liable to the failure to use reasonable care to avoid injuring the respondent after the motorman actually saw him on the track. But the appellant contends that it was error to so eliminate the defense of contributory negligence where the court also included in his instructions as negligence for which the appellant would be liable the failure to use reasonable care to observe whether there was anything on the track. In other words, the contention of the appellant is that the rule of last clear chance can only be invoked for a failure to exercise reasonable care to avoid injury after the peril is actually discovered, and not for a failure to exercise such care to discover whether any one is in a position of peril.

Whatever the limits of the rule in cases of injury to trespassers on a railroad right of way at points other than highway crossings (a rule which we are not now called upon to determine), the rule cannot be soundly so limited in cases of injury by locomotives or trains to travelers on the public highway at railway crossings or to travelers on the public streets injured by street cars. In such cases, the injured persons, not being trespassers, are not guilty of negligence *per se* in being upon any part of the road or street. There is, therefore, a positive duty not alone on them to keep a proper lookout for trains or cars, but also a positive duty on the part of the operator of the trains or cars to keep a reasonable lookout for travelers on the highway or street. Appellant's criticism apparently overlooks the true foundation and extent of the rule of last clear chance, which, as we have seen, is but a phase of the doctrine of proximate cause. The definition of the last clear chance as a rule of liability makes this plain:

"The party who has the last opportunity of avoiding accident, is not excused by the negligence of any one else. His

negligence, and not that of the one first in fault, is the sole proximate cause of the injury. Stated otherwise, the doctrine is that where both parties are negligent, the one that had the last clear opportunity to avoid the accident, notwithstanding the negligence of the other, is solely responsible for it,—his negligence being deemed the direct and proximate cause of it." 1 Thompson, Negligence, § 240.

See, also, Shearman & Redfield, Negligence (5th ed.), § 99. The rule so defined includes both phases of negligence on the defendant's part wherever that negligence is the proximate cause of the injury.

Negligence in failing to use reasonable care to avoid injury after the plaintiff's peril is actually discovered and should be appreciated by the defendant, as invoking the rule, has been frequently applied in spite of the continuance of the plaintiff's negligence up to the very time of the injury, in cases where the plaintiff, though negligent, remains unconscious of his danger after it was discovered and should have been appreciated by the defendant. This is because with the actual discovery of the peril arises a new duty on the defendant's part to the individual in a known state of peril in addition to the general duty to use reasonable care to avoid injury to any member of the public, and the failure to observe this new duty is clearly the proximate cause. This element is found in our recent decision in *O'Brien v. Washington Water Power Co.*, 71 Wash. 688, 129 Pac. 391, where the motorman discovered an object on the track at a distance of 300 feet, appreciated that it was a wagon and team at a distance of about 50 feet, and failed throughout the whole time to get his car under such control as to avoid the accident. This also was the governing principle in the instruction sustained by our recent decision in *Tecker v. Seattle, Renton & S. R. Co.*, 60 Wash. 570, 111 Pac. 791, Ann. Cas. 1912 B. 842. In the *O'Brien* case, however, there was also present the additional question for the jury whether the plaintiff's negligence had not terminated. He claimed that he was trying to get off of the track when he was struck.

The other phase is negligence in failing to keep a reasonably careful lookout which would have discovered the plaintiff's peril in time to avoid the injury. This phase of negligence as invoking the rule of last clear chance is absolutely denied by some courts. *Dyerson v. Union Pac. R. Co.*, 74 Kan. 528, 87 Pac. 680, 7 L. R. A. (N. S.) 132; *Bennichsen v. Market St. R. Co.*, 149 Cal. 18, 84 Pac. 420; *Fonda v. St. Paul City R. Co.*, 71 Minn. 438, 74 N. W. 166; *Marple v. Topeka R. Co.*, 85 Kan. 699, 118 Pac. 690; *Hot Springs St. R. Co. v. Johnson*, 64 Ark. 420, 42 S. W. 833. On the other hand, many of the courts hold that this phase of negligence is sufficient to invoke the rule of last clear chance whenever the defendant's negligence continues after the negligence of the plaintiff has actually ceased or has culminated in a dangerous situation such that due care on the plaintiff's part would be unavailing, which situation a reasonable lookout on the defendant's part would have revealed in time to avoid the injury. This is because in such a case the failure to observe the reasonable care due to all the members of the public is the proximate cause of the injury, the plaintiff's prior negligence being a mere condition. In such a case, there is no longer a concurrence of negligence. This latter view is certainly the more humane, and as we think, the more logical. It seems to us illogical to hold a defendant not liable for injury resulting from its continuing negligence after the negligence of the plaintiff had culminated, simply because the plaintiff's negligence at an earlier stage of the circumstances had concurred with the negligence of the defendant. In other words, it seems to us that such continuing negligence cannot be distinguished from newly arising negligence on the defendant's part, since the plaintiff's negligence does not concur in producing the injury in either case. Many authorities clearly support this view.

"In such a case the plaintiff's negligence is deemed to cease when he reaches such a point that due care on his part would be unavailing, and the defendant is liable, whether he

actually knew of the plaintiff's danger or could have known in the exercise of due care." *Evansville & S. I. Traction Co. v. Johnson* (Ind. App.), 97 N. E. 176.

See, also, *Teakle v. San Pedro, L. A. & S. L. R. Co.*, 32 Utah 276, 90 Pac. 402, 10 L. R. A. (N. S.) 486; *Doll v. Louisville R. Co.*, 138 Ky. 486, 128 S. W. 344; *Richmond Traction Co. v. Martin's Adm'r*, 102 Va. 209, 45 S. E. 886; *Kinlen v. Metropolitan St. R. Co.*, 216 Mo. 145, 115 S. W. 523; *Wilmington City R. Co. v. Truman*, 7 Penn. (Del.) 197, 72 Atl. 983; *Acton v. Fargo & M. St. R. Co.*, 20 N. D. 434, 129 N. W. 225; *Indianapolis Traction & Terminal Co. v. Kidd*, 167 Ind. 402, 79 N. E. 347, 7 L. R. A. (N. S.) 143; See, also, note to *Bogan v. Carolina Cent. R. Co.*, 55 L. R. A. 418.

Example of the application of this phase of the rule of last clear chance is found in the recent case of *Nicol v. Oregon-Washington R. & Nav. Co.*, 71 Wash. 409, 128 Pac. 628, where, through his own negligence, the plaintiff placed his automobile in an inextricable position on a railway crossing, and the engineer of the defendant, by the negligent failure to keep a proper lookout when approaching the crossing, did not discover the peril in time to avoid the accident. Such, also, was the governing principle in *Morris v. Seattle, Renton & Southern R. Co.*, 66 Wash. 691, 120 Pac. 534, where the performance of the motorman's general duty to maintain a reasonably careful rate of speed and to keep a reasonably careful lookout would have afforded the motorman an opportunity to stop the car in time to avoid the accident, even after the plaintiff had put himself in a position from which he could not extricate himself in time to avoid the injury. We there held the motorman's failure in these duties the proximate cause, even conceding the plaintiff's prior negligence. The rule in this broader sense is also recognized in *Gilcher v. Seattle Elec. Co.*, 69 Wash. 78, 124 Pac. 218. We are constrained to hold that the instructions complained of, by including a failure to observe the legal duty to keep a reasonably careful lookout on the motorman's part, if the

proximate cause of the injury, was not erroneous as too broad a statement of the rule of last clear chance as a ground of liability.

There can be no question that, if the respondent was drugged, or if he became sick or otherwise providentially incapacitated and fell unconscious on the track, not being a trespasser, he was guilty of no negligence concurrent or otherwise, and the failure to keep a lookout, if such would have disclosed his situation to the motorman in time to avoid the injury, would render the appellant liable. The question whether he was in fact conscious was by the court submitted to the jury. The finding that he was unconscious was, by the second instruction above quoted, made a condition precedent to liability under the rule of last clear chance. There was, however, ample evidence from which the jury might have found that the respondent was voluntarily and helplessly drunk. That fact, if it was a fact, the court told the jury was immaterial. It is a universal rule that voluntary drunkenness is no excuse for negligence, either primary or contributory. "It is not even an excuse from crime." Drunkenness, however, is not in itself negligence. It is merely an evidentiary fact tending to prove negligence. 1 Thompson, Negligence, § 340; *Conrad v. Graham & Co.*, 54 Wash. 641, 103 Pac. 1122, 132 Am. St. 1137.

It remains, therefore, to determine whether the negligence arising from drunkenness culminates with insensibility, or whether the negligence continues so long as the dangerous situation arising from it continues. If the negligence culminates with the absolute unconsciousness superinduced by drinking, then the instruction was correct and the failure of the motorman to keep a proper lookout would be the proximate cause of the injury. The negligence of the respondent, having culminated with his unconsciousness, ceased to concur with that of the motorman. If, on the other hand, the negligence arising from drunkenness continues after uncon-

sciousness, then the instruction was wrong, since the respondent's negligence would continue and concur with that of the motorman up to the instant of the injury.

Negligence consists in doing some act which should not have been done, or in omitting some act which should have been done. It implies the power of volition at the time of the act or omission. So understood, it seems to us that the negligence resulting from drunkenness culminates with unconsciousness. This is not holding that negligence is excused by drunkenness, but that it is terminated by unconsciousness. Any other view would create a surprising paradox. Suppose that the respondent, in a perfectly sober condition, had driven an automobile at a grossly careless and reckless rate of speed, and with absolute lack of care for his own safety, struck a telephone pole and had been thrown unconscious upon the street car track, in the exact position in which he was when he was struck. Obviously, his negligence would then have terminated, but the condition or status created by it would still continue. It seems too plain for argument that in such a case, if the motorman thereafter failed to keep a reasonably careful lookout, and because of such failure did not discover the respondent in time to avoid injuring him, then the negligence of the motorman would have been the proximate cause of the injury. There is absolutely no difference in principle between the case in hand and the case supposed, unless we are ready to hold that a drunkard is without the pale of common humanity.

In *Pickett v. Wilmington & W. R. Co.*, 117 N. C. 616, 23 N. E. 264, 53 Am. St. 611, 30 L. R. A. 257, the supreme court of North Carolina, in a well-considered and exhaustive opinion overruling a prior decision by a divided court to the contrary (*Smith v. Norfolk & S. R. Co.*, 114 N. C. 728, 19 S. E. 863, 923, 25 L. R. A. 287), stated the principle which we have announced as follows:

"If, in the case at bar the plaintiff's intestate was in fault in lying down upon the track and his carelessness culminated in doing so, then it is clear that the engineer was in fault in

failing to keep a proper lookout if he could by doing so have seen the deceased in time through the reasonable use of the appliances at his command to have averted the injury, and his carelessness of course intervened after that of plaintiff's intestate. If he had looked and stopped the train the collision would have been prevented notwithstanding the previous want of care on the part of the boy who was killed."

Further elucidating the same principle, the court said:

"It is not strange that courts, where it is held that railway companies owe no duty to any one who goes on their track and is not seen, should have sought support for their position, where a drunken man happened to be the victim of carelessness, on the theory that he was deemed to be still concurring up to the time of the accident, and was less deserving of consideration than a sober trespasser. But it must not be forgotten that in the last analysis, notwithstanding the additional reasons assigned, the drunkard, in the states holding to the principle that we have repudiated, is excluded from the right to recover because he is a trespasser, just as his sober neighbor would be barred of the right if he were injured by his side, and when actually seen the same duty of protection arises as to both. The admitted test rule to which we have adverted, that he who has the last clear chance, notwithstanding the negligence of the adverse party, is considered solely responsible, must be applied in contemplation of the law which prescribes and fixes their relative duties. The law, as settled by two lines of authorities here, imposes upon the engineer of a moving train the duty of reasonable care in observing the track and if by reason of his omission to look out for cows, horses and hogs, he fails to see a drunken man or a reckless boy asleep on the track, it cannot be denied that he is guilty of a dereliction of duty. If he is guilty of a breach of duty we cannot controvert the propositions which necessarily follow from the admission that but for such omission or if he had taken advantage of the last clear opportunity to perform a duty imposed by law, the train would have been stopped and a life saved . . . We are of opinion that, when by the exercise of ordinary care an engineer can see that a human being is lying apparently helpless from any cause on the track in front of his engine in time to stop the train by the use of the appliances at his

command and without peril to the safety of persons on the train, the company is liable for any injury resulting from his failure to perform his duty."

The case of *Kramer v. New Orleans City & L. R. Co.*, 51 La. Ann. 1689, 26 South. 411, cited by the appellant, does not militate against the views here expressed. It apparently assumes that it was the duty of the defendant's motorman to keep a lookout, and that if the accident resulted from the failure so to do, the defendant would be liable regardless of the plaintiff's drunkenness. A recovery in that case, however, was not permitted, because the court found that there was not sufficient evidence that by such lookout the motorman could have discovered the plaintiff in time to avoid the injury, the accident occurring near a curve in the track and the plaintiff's body, except his feet, being hidden in the grass. Moreover, in that case there was no evidence that the limbs injured were on the track at any time when preventive measures would have been effective. In *Gilcher v. Seattle Elec. Co.*, *supra*, a case closely analogous to the case at bar in every particular, save in that case there was no evidence that the plaintiff was on the track prior to the very instant when he was struck, we clearly recognized the rule here announced. We there said:

"Respondent urges the last chance doctrine to fix appellant's liability. But that doctrine has no application to the evidence before us, as it does not appear that the gripman did see, or, in the exercise of due care could have seen, respondent in time to stop the car."

In the case here there was evidence, sufficient to take the case to the jury, that the respondent was on the track in the exact position as when struck, when the car was over 80 paces away.

1 Thompson on Negligence, § 341, states the rule as follows:

"But it should be carefully kept in mind that voluntary intoxication on the part of a person killed or injured is or is

not to be regarded as equivalent to contributory negligence, accordingly as it contributes or does not contribute to bring about the injury; or accordingly as it is or is not to be regarded as the proximate cause of the injury . . . So, suppose that a man, through voluntary drunkenness, exposes himself upon a railway track in a condition of absolute intoxication, then, while it will be negligence for those in charge of an approaching train to run over him, if they see him so exposed in time to avoid the catastrophe by the exercise of reasonable care, or if, by keeping a reasonable lookout, they might have so seen him in time so to avoid injuring him but failed to do so,—on the principle already and hereafter considered, the negligence of the railway company will be the proximate cause of the accident."

See, also, 2 Thompson, Negligence, § 1464.

There are authorities which hold to the contrary, and seem to indicate that the only duty owed by a railroad or street car company to one drunk to insensibility upon its track is merely to abstain from wilfully or wantonly injuring him after he is actually discovered in that position. *Houston & T. C. R. Co. v. Sympkins*, 54 Tex. 615, 38 Am. Rep. 632; *Taylor v. Houston Elec. Co.*, 38 Tex. Civ. App. 432, 85 S. W. 1019. We prefer, however, to adopt what seems to us to be the more logical as well as the more humane rule.

Certain assignments of error are predicated upon the refusal of the court to give instructions requested by the appellant. Having found, however, that the instructions given correctly stated the law as applied to the evidence, we find it unnecessary to review these assignments.

The judgment is affirmed.

CROW, C. J., MAIN, MORRIS, and FULLERTON, JJ., concur.