# WASHINGTON-VIRGINIA RAILWAY COMPANY *v.* HIMELRIGHT.

---

PLEADING; STREET RAILROADS; PERSONAL INJURIES; NEGLIGENCE; CONTRIBUTORY NEGLIGENCE; REVERSIBLE ERROR; PROXIMATE CAUSE; EVIDENCE; LAST CLEAR CHANCE; QUESTIONS FOR JURY.

1. A declaration in an action against a street railway company for injuries inflicted by one of its cars sets forth with reasonable certainty the duty of the defendant, the breach of that duty, and the time, place, and circumstances surrounding such breach, where it alleges that

it was the defendant's duty to operate its cars with reasonable care and caution respecting the safety of persons on the street, that it was negligent in this regard in that on a certain day while one of its cars was being operated on a certain street between certain cross streets at an unlawful speed, without any proper lookout for, or attention to, persons rightfully on the street, no warning signal was given, and the car was not under proper control, so that it could be stopped within a reasonably safe distance from persons on or near the tracks; and that because of such negligence the plaintiff was run down by one of such cars.

2. No contributory negligence which will preclude recovery for injuries at night by a street car at a point so brilliantly lighted as to make it apparent that a motorman exercising reasonable care could have detected the person injured in ample time to have warned him can be attributed to such person as a matter of law upon the ground that, being at work upon the track, he failed to see the car coming, and sought to detect the approach of cars by watching for headlights, although he must have known that they would appear dim in such a well-lighted area.

3. The exclusion of evidence relating to a conceded point is not error.

4. It is the duty of those engaged in operating street cars along the streets of a city to keep a lookout ahead and exercise reasonable care to avoid injury to pedestrians (citing *Capital Traction Co.* v. *Apple,* 34 App. D. C. 559; *Washington R. & Electric Co.* v. *Cullember,* 39 App. D. C. 316); and where there is such a duty, reasonable means of knowledge must be regarded as the equivalent of knowledge.

5. Evidence is sufficient to warrant a finding that a street railway motorman, by the exercise of reasonable care, could have discovered the plaintiff at work on the tracks in ample time to avoid running him down, where it shows by the testimony of the motorman himself that the car was stopped within 15 feet after discovering the plaintiff on the tracks, and that when the car was about 20 feet from the plaintiff, he almost stopped it to permit a pedestrian to get off the track, and started it up without seeing the plaintiff until within 5 or 6 feet of him; and it further shows that the plaintiff was visible from 50 to 75 feet away; and a passenger testifies that from the rear platform of the car he saw the plaintiff when fifteen or twenty feet away.

6. A person run down by a street car after negligently placing himself upon the track in circumstances rendering such negligence the initial cause, or a condition and not a proximate cause, may recover from the railway company for resulting injuries, where the motorman, by exercising reasonable care, could have seen him in time to avoid

the accident, and negligently failed to do so.    (Citing *Washington R. & Electric Co.* v. *Cullember, supra.*)

7. The question whether one's negligence in placing himself upon a street car track was the initial cause or condition, and not a proximate cause, so as to render the street railway company liable for injuries inflicted by a car whose motorman, by exercising reasonable care, could have seen such person in time to avoid the accident, is for the jury, where it appears that he remained motionless until just before he was struck, and evidence, on the one hand, tends to show that he was at work, and, on the other, that he was asleep or drunk.

8. The question whether a street car by which the plaintiff was struck was under proper control is properly submitted to the jury over defendant's objection, in an action to recover for the resulting injuries, where the evidence shows that the motorman, when about 20 feet from the plaintiff, who was then motionless upon the track, and was either at work, drunk, or asleep, could have, by exercising reasonable care, seen the plaintiff and stopped the car before striking him, but that he accelerated its speed at that point after slowing up for a pedestrian, and failed to see the plaintiff until it was too late to stop,—as such evidence obviously indicates that the car was not under proper control.

No. 2701.   Submitted November 6, 1914.   Decided December 7, 1914.

HEARING. on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in favor of the plaintiff in an action to recover damages for personal injuries.
*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment for the plaintiff, Harry Himelright, in the supreme court of the District in an action against the defendant for personal injury.

The declaration alleged, among other things, that the defendant Washington-Virginia Railway Company, on the 15th of July, 1912, operated an electric railway along Fourteenth street, S. W., in this city, and that it was its duty to operate and control its cars with reasonable care and caution respecting the safety of pedestrians and others on the streets and avenues along which its cars were operated; that notwithstanding its duty in

this regard said defendant became and was negligent "in that on the day aforesaid, when one of its cars was being propelled and operated along and over its tracks on Fourteenth street between B and C streets, Southwest, by said defendant company, the Washington-Virginia Railway Company, its servants or agents then and there in charge of and controlling said car, at a high and unlawful rate of speed, without any proper lookout being kept by the said defendant company's motorman, and with no sufficient attention being paid by him to pedestrians or others then rightfully in and upon said public street, as aforesaid; no warning bell or warning signal of any sort, indicating the approach of said car, was sounded or given, and neither was said car kept under such control by its said motorman as that, when occasion required, it could be slowed down or stopped within a reasonable and safe distance for those on or near to said defendant railway company's tracks; whereby, and by reason of which said negligence, said plaintiff, while himself in the exercise of due care, was collided with, struck and run down by one of the said defendant company's cars, because of said defendant company's negligence, as aforesaid;" that said defendant has since become merged with the defendant the Washington Utilities Company, which latter company has assumed and made itself liable for the negligence of the former company growing out of the accident aforesaid, etc. To this declaration the defendants interposed a demurrer, the grounds being that it did not state a cause of action, that it was indefinite and uncertain, that it did not set forth the time or place of the accident with sufficient certainty or definiteness, and that it did not set forth with sufficient certainty or definiteness "how or under what circumstances the collision between the plaintiff and the defendant's car occurred." The demurrer having been overruled, the defendants pleaded over. Thereupon the plaintiff, by leave of court and without objection by defendants, amended the declaration by averring that the accident occurred on July *14, 1912,* and between *D and Water streets,* Southwest. To the amended declaration no demurrer was interposed.

The plaintiff's evidence was to the following effect: The

new Bureau of Engraving and Printing was being erected on
the west side of Fourteenth street, S. W., nearly opposite the
freight yard of the Pennsylvania Railroad. To facilitate the
delivery of material for use upon the new building, permanent
track No. 5 of the railroad company was extended across Four-
teenth street into the Bureau grounds. When this extended
track was in use, it necessarily crossed the tracks of the defend-
ant railway company. The arrangement between the railroad
and railway companies required that the latter's tracks should
not be bridged over to accommodate the temporary track until
after the last car of the railway company had passed, about
12: 50 A. M., and that it should be removed by 5: 15 A. M. The
plaintiff, who had been employed by the Pennsylvania Railroad
Company for almost twenty-three years, about the 1st of June,
1912, was intrusted with the work of laying the temporary track
over the railway company's tracks. He did this work every
night in the week, with the exception of Sunday night, up to the
time of the accident, and sometimes it was necessary that the
track should be laid on Sunday night as well. That there should
be no delay in laying the track as soon as the last car ran by,
it was necessary for the plaintiff to see that all the angle irons,
bolts, splices, etc., were at hand; in other words, that every-
thing was ready for the immediate emplacement of the tempo-
rary track when the last car had passed.

On the night of the accident, plaintiff reached the locality
about 12 o'clock, went over to the electric power house near by,
and obtained angle bars and a reflecting lamp of about 150
candle power. He knew that other regular cars were yet to
pass, and when they were due, and he requested the railroad
watchman to ascertain by telephone whether there were to be
extra cars that night. He then went to the crossing, on either
side of which were the abutments that were placed across the
street after the temporary track had been put down. He set
his lamp so that it reflected up the track. In addition to this
lamp, there were arc lights sufficiently near thoroughly to light
the place where he was. In fact, the workman who put in the
track after the accident testified that it was so light that he

put in the crossing without any lamps at all. After the plaintiff had put down his tools and placed his lantern, he testified that he "went to look over the level of the two ends of the abutments where they filled in, to see if there were any pebbles that had fallen into the slot of the track, so that they could get the angle bars in. The night before they stole the bolts from this end [indicating], and I looked in here [indicating] and found them, took this lamp, set it up here under this barricade [indicating], was throwing some dirt out, and I had my left hand up on the barricade here [indicating] throwing dirt out. I looked up northward on the Mt. Vernon track, did not see any headlight coming. This lamp was setting right here in that position, shining right up the track [indicating]. I heard a little noise and I looked up. It sounded like the car running over a pebble, and I looked up, and there was a car right on me, and then I seen the motorman who was turning his head from west to south as if he had been looking over at the new Bureau, and then, being around and being in tight places frequently, I taken everything in at a glance. I did not have time to get across in front nor around here [indicating]. I had this hand on there, and throwed myself erect, and caught my hand across this way [indicating] and throwed myself back. The car struck me there [indicating], down here, over this foot," etc. He further testified that he was in a stooping position between two and three minutes, and that he frequently looked up the hill towards the north for a headlight; that the District was putting down water mains along Fourteenth street, and that some dirt had been thrown out north of the temporary track; "that the occasion for his being in the stooping position for the length of time that he was, was on account of clods of dirt that rolled down in these holes and filled them up, and the bolts had been pushed back under the planking; that if the bolts could not be used,—and some were stolen the night before,—he had to go to 10th street to get some more before the temporary track could be used; that while he was in the stooping position he did not see any headlight on an oncoming car; that he looked up two or three times." Both his testimony and that of one of his witnesses tended to

show that no bell was sounded by the motorman. The watch-man previously mentioned testified that he telephoned for the plaintiff, and then informed him that there would be no extra cars that night; that he was then about 150 feet from the wit-ness; that witness did not know whether plaintiff was sitting or stooping over; that he called to him that there would be no ex-tra trains, and plaintiff answered, "All right;" that "witness could see Himelright all right from where he was, as there were two electric lights around there; that he had no trouble in seeing him."

At the close of the evidence for the plaintiff a motion was made by the defendants for a directed verdict, which, being overruled, the defendants offered in evidence a plat and the contract between the Pennsylvania Railroad and the Washing-ton-Virginia Railway Company, relating to the putting down of said temporary track. The court admitted the plat, but declined to admit the contract, to which an objection was interposed. The defendants then introduced evidence tending to show that the car which hit the plaintiff could have been seen at a sufficient distance by the plaintiff easily to have enabled him to have reached a place of safety; that the motorman rang his bell re-peatedly when he was within less than 50 feet of the plaintiff. One witness, who was waiting for the car at a point 75 feet from the point of the accident, testified that he saw the car coming; that it slowed up a little before it reached the plain-tiff, who "was hurt right at the temporary crossing; that he was sitting down there with his face towards the southbound track; * * * that he [witness] had no trouble seeing Himelright from where he was; that he does not remember seeing Himel-right move from the time he sat down; that he was sitting, not lying down." Another witness for the defendants, who was standing on the bottom step at the rear end of the car that struck the plaintiff, testified that when the car was within *15 or 20* feet from the point of the accident, he noticed the plain-tiff sitting on the track, and it seemed to the witness as though the plaintiff was looking directly across at the freight yard; *that he could see plaintiff distinctly* as he sat with his head

bowed down; that when the gong sounded, plaintiff "raised back as though to let the car go past;" and that this occurred *when the car was within 6 or 7 feet of the plaintiff.*

The motorman testified that his car was the first section of the last train that left on the Fairfax division; that there was one car to follow on the Mt. Vernon division at 12:30; that as he was passing D street, which is 175 feet from the point of the accident, a man came across from the freight yard, walking diagonally as though he was going to cross the track; that witness was ringing his bell, to which the man gave no heed, and walked upon the track about 10 feet in front; that witness rang the bell and the man got out of the way; that witness then "released the air and started on again, and the next thing I knew I looked out the front window and saw this man sitting on the crossing, about 5 or 6 feet from me. I looked out of the front and I was right on top of him;" that he stopped the car in about 15 feet. On cross-examination the witness testified that at the time the man who had gotten on the track stepped off from it, the car was *10 or 12 feet from him,* and that *the man was about 10 or 12 feet north of the temporary crossing;* that "the man was about 10 feet this side of the crossing [temporary crossing], and I ran up 8 or 10 feet of the man, I guess, something like that, * * *; that at this time the car was between 15 or 20 feet north of the crossing [temporary crossing]; that he [witness] was looking straight down the track, but did not see Himelright;" that previously he had not seen men preparing or working on the temporary crossing, but "that he had seen them standing around there." The witness was asked whether he was not looking over in the Bureau grounds just prior to the accident, and answered: "No, sir; I do not think I was." Asked whether he recollected, he replied: "I do not remember, but I am positive I was not, because I was watching this man come across the track;" that he had his head-light burning with a screen over it, as was required in the District, and that it "does not give much of a light for you to see by; that it gives a dim light you can see, but it does not give much light ahead; pretty near hardly any."

There was some evidence tending to show that the plaintiff had been drinking, but the plaintiff denied this. One of the physicians at the Emergency Hospital, testifying for the defendants, was asked whether the plaintiff explained how it was that he came to be run over, and answered: "I am not positive, but it occurred to me that he told me he was asleep." Upon cross-examination the witness was not quite sure that the plaintiff told him he was either sitting or lying down at the time of the accident. One of the surgeons of the defendant railway company, who saw the plaintiff *early the next morning after the accident,* testified that the plaintiff then informed him that he reached the crossing a little before it was time for him to commence work; that he went across the street to get some tools, and that, as the night was warm and he was tired, he sat down and fell asleep, and that the car got on him before he knew it. The plaintiff denied having made this statement.

At the close of all the evidence the defendants renewed their motion for a directed verdict, which was overruled.

During the course of the court's charge the jury were instructed that, although the defendant railway company had the preferential *right of way for its cars over the part of the street* occupied by its tracks, the law required that both the plaintiff and defendant should exercise their respective rights of user with due regard to the rights of the other; that each owed to and had the right to expect from the other the exercise of reasonable care and prudence in all the circumstances; and if the jury should find that the defendant, at the time of the accident, did not exercise ordinary care and prudence in approaching the point where the plaintiff was injured, and that the result of such lack of care and prudence *was the efficient and proximate cause of the injury,* their verdict should be for the plaintiff. The jury were further instructed that "contributory negligence on the part of the plaintiff would not avoid the defendant's negligence and prevent the plaintiff from recovering from the defendant, if you believe that the defendant saw, or by the exercise of reasonable care and prudence on its part could have seen,

the plaintiff in time to have avoided the accident, and negligently failed to do so."

Later on the court instructed the jury, at the request of the defendants, that the plaintiff could not recover unless negligence on the part of the defendants was established by a preponderance of the evidence, and that even if the jury believed from the evidence that the defendant had been negligent the plaintiff could not recover if the jury should find that he "was also guilty of negligence," *and his negligence directly contributed, to any extent, to his injury.* As there was no evidence tending to show that the car was being propelled at an unlawful rate of speed, that question was withdrawn from the jury. The defendants excepted to so much of the charge as submitted to the jury the doctrine of the last clear chance, and also to the submission of the question as to whether or not the car was under proper control. Twelve of the thirteen prayers offered by the defendants were rejected by the court, to the rejection of which an exception was noted.

*Mr. John S. Barbour, Mr. D. S. Mackall,* and *Mr. Basil D. Boteler* for the appellants.

*Mr. Leonard J. Mather, Mr. Richard J. Downey,* and *Mr. John D. Carmody* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

The declaration is sufficient. It sets forth with reasonable certainty the duty of the defendant railway company, the breach of that duty, and the time, place, and circumstances surrounding such breach. Moreover, the trial was upon the amended declaration, to which no objection was interposed.

There was no error in overruling the motions for a directed verdict. The plaintiff was not a trespasser, and the evidence introduced by him clearly tended to show that he was in the exercise of due care at the time of the accident. That the place was well lighted is apparent from the defendant's as well as the

plaintiff's evidence, and even although plaintiff must have known that the headlight on defendant's car was so dim as to be distinguished only with difficulty by one within the lighted zone, it likewise must have been apparent that the motorman, whose duty it was to keep a lookout ahead while he was traversing the streets of the city, would have no difficulty, if he exercised reasonable care, in distinguishing objects within such zone, and in ample time to warn the plaintiff of the approach of the car. Clearly, under the evidence, the question of contributory negligence was one for the jury to determine.

Since the time when the temporary track was to be put down and taken up was conceded, it was not error to exclude the contract between the railroad and railway companies relating thereto.

That it is the duty of those engaged in operating street cars along the streets of the city to keep a lookout ahead, and exercise reasonable care to avoid injury to pedestrians, has been determined by this court. *Capital Traction Co.* v. *Apple,* 34 App. D. C. 559, 569; *Washington R. & Electric Co.* v. *Cullember,* 39 App. D. C. 316. And where there is such a duty, reasonable means of knowledge must be regarded as the equivalent of knowledge. *Bourrett* v. *Chicago & N. W. R. Co.* — Iowa, —, 121 N. W. 380 (1909); *Teakle* v. *San Pedro, L. A. & S. L. R. Co.* 32 Utah, 276, 10 L.R.A.(N.S.) 486, 90 Pac. 402; *Herrick* v. *Washington Water Power Co.* 75 Wash. 149, 48 L.R.A.(N.S.) 640, 134 Pac. 934; *Elliott* v. *New York, N. H. & H. R. Co.* 83 Conn. 320, 76 Atl. 298; *Baltimore Traction Co.* v. *Wallace,* 77 Md. 435, 26 Atl. 518; *Richmond Traction Co.* v. *Martin,* 102 Va. 209, 45 S. E. 886.

Did the defendant's motorman, in the present case, exercise reasonable care to avoid injuring the plaintiff? And, if he did not, can it reasonably be said that his breach of duty was the proximate cause of plaintiff's injury? That the evidence would have warranted the jury in finding that the motorman, had he exercised reasonable care, could have seen the plaintiff in ample time to avoid the accident, there can be no doubt. The car was stopped, according to the motorman's testimony, within 15 feet

after he saw the plaintiff; and as the evidence clearly tended to show that the plaintiff was visible from 50 to 75 feet away, it is apparent that had the motorman looked he would have seen him. According to the testimony of the motorman himself, he was about 20 feet from the plaintiff when the pedestrian who had walked upon the track got out of the way. He had then brought his car almost to a stop, and yet, according to his own statement, he then "released the air and started on again," and did not see the plaintiff until the car was within 5 or 6 feet from him. It will be remembered that a passenger who was standing on the rear steps of this car, and who testified for the defendants, stated that he plainly saw the plaintiff when the car was within 15 or 20 feet from him. There was, therefore, ample evidence from which the jury might have found that had the motorman exercised reasonable care he would have discovered the plaintiff in ample time to have avoided injuring him.

In *Washington R. & Electric Co.* v. *Cullember,* 39 App. D. C. 316, it was held that a street railway company is liable for personal injuries sustained by one thrown from his wagon when it was struck by a car, although his own negligence may have exposed him to the risk of injury, if the motorman saw him, or by the exercise of reasonable diligence could have seen him, in time to stop the car. In *Elliott* v. *New York, N. H. & H. R. Co.* 83 Conn. 320, 76 Atl. 298, the plaintiff's intestate was killed while attempting to drive across the defendant's railroad at a grade crossing, and, as here, the question was submitted to the jury whether, entirely apart from the plaintiff's alleged negligence in getting upon the track, "the defendant negligently failed in its duty toward him after it knew or ought to have known of his presence there and his peril." This charge was sustained. In the course of the opinion the court said: "The jury are to decide, under the evidence and claims, whether the plaintiff was free from negligence which was a proximate cause of the injury. If they find that he was negligent in going upon the track, but that such negligence was not a proximate cause of the injury, and that there was no subsequent negligence on his part essentially contributing to it, he

may recover if the jury also find that the defendant's negligence was the proximate cause of it.   *   *   *   The question always is, Whose negligence was the proximate cause of the injury?   *   *   *   We think that the defendant's duty to avoid the collision arose when, by the use of due care, it would have known of the intestate's peril, and was not postponed until it had actual knowledge." In *Herrick* v. *Washington Water Power Co.* 75 Wash. 149, 48 L.R.A. (N.S.) 640, 134 Pac. 934, the plaintiff was injured while lying in a street and partially across the track of the defendant railway company. The jury, as here, were instructed that if the motorman "saw, or by the exercise of ordinary care ought to have seen, the plaintiff lying upon the track of the defendant in front of him, as alleged, in time, by the exercise of ordinary care and diligence on his part, to have prevented the car from running over or striking him," the plaintiff might recover if the jury should further find that such negligence on the part of the motorman was the proximate cause of the injury. This instruction was approved. In the course of the opinion the court observed that "in such a case the failure to observe the reasonable care due to all the members of the public is the proximate cause of the injury; the plaintiff's prior negligence being a mere condition." In other words, this rule constitutes no exception to the general doctrine of contributory negligence. It simply means that where the negligence of the defendant, in failing to keep a proper lookout, intervenes between the negligence of the plaintiff and the accident, the negligence of the former may be regarded as the proximate cause of the injury, while the negligence of the latter may be considered as the remote cause or condition. Necessarily, if it is found that the negligence of the plaintiff was merely the remote cause or condition, it cannot be said to have been contributory, since negligence, to be contributory, must be one of the proximate causes. Here, assuming that there was evidence from which the jury fairly could have found that the plaintiff was guilty of negligence in placing himself upon the defendant's track as he did, it was clearly for the jury to

say whether that negligence was not merely the initial cause or condition out of which his injury grew, and whether the negligence of the defendant's motorman in failing to keep a proper lookout, as he was in duty bound to do, was not the immediate or proximate cause of the injury.  The witnesses all agree that the plaintiff's position did not change after he placed himself upon the track, until the car was almost upon him.  His peril, therefore, would have been obvious to the motorman had he exercised reasonable care, and the failure in that regard, in the circumstances, well may have been found to be the immediate and proximate cause of plaintiff's injury.  *Grand Trunk R. Co.* v. *Ives,* 144 U. S. 408, 429, 36 L. ed. 485, 493, 12 Sup. Ct. Rep. 679, 12 Am. Neg. Cas. 659.  We think the charge as given was correct.

The result would be the same even if we should assume that the plaintiff was asleep or intoxicated when he was injured. *Pickett* v. *Wilmington & W. R. Co.* 117 N. C. 616, 30 L.R.A. 257, 53 Am. St. Rep. 611, 23 S. E. 264; *Herrick* v. *Washington Water Power Co. supra.*  The proximate cause of the injury still might be the negligent failure of the motorman to keep a proper lookout.

It was not error that the court declined to withdraw from the jury the consideration of the question whether the car was under proper control at the time of the accident.  As to the duty of the motorman, the court instructed the jury, in effect, that if they should find from the evidence that the plaintiff negligently exposed himself to the risk of injury by going upon the track to engage in the work which he claimed he was doing at the time, and that the motorman, while the plaintiff was so exposed, saw him or could have seen him by the exercise of reasonable care and diligence in time to have stopped his car and negligently failed to do so, and that negligence was the proximate cause of the injury, their verdict should be for the plaintiff.  It will be remembered that the motorman himself testified that when he was within about 20 feet of the plaintiff he "released the air and started on again."  Had he exercised reasonable care, he would have discovered the peril of the plain-

tiff, and, instead of "releasing the air" and accelerating the speed of his car, would have put on the brake and brought his car to a stop. Obviously, therefore, under the evidence, his car was not under proper control.

We do not deem it necessary to review the various prayers offered. It is enough to say that the charge as given fairly and properly presented every phase of the case to the consideration of the jury.

Judgment affirmed, with costs.                    *Affirmed.*