[No. 13059.  Department Two.  August 21, 1916.]

CAROLINE SCHARF, *Guardian etc.*, *Appellant*, v. SPOKANE & INLAND EMPIRE RAILROAD COMPANY, *Respondent*.[1]

RAILROADS—OPERATION—INJURY TO LICENSEES—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE—EVIDENCE—SUFFICIENCY. A naked licensee, using a railroad switch yard by sufferance, is guilty of contributory negligence which was the proximate cause of his death, where he walked along the middle of a railroad track while on either side were paths equally as good which he might have traveled in safety, and after seeing a switch engine on a parallel track stopping to uncouple a car, he never looked back to see if it was put in motion; since he was bound to exercise the highest degree of care for his own safety.

SAME—OPERATION—INJURY TO LICENSEE — NEGLIGENCE—COMPARATIVE NEGLIGENCE. The failure to ring a bell or carry a forward lookout upon a switch engine in a switch yard, although negligent, does not amount to wantonness or wilfulness in running down a licensee who was not seen by the engineer, and therefore does not render the company liable where the licensee's own negligence was the proximate cause of his death; as the doctrine of comparative negligence does not obtain in this state.

SAME—INJURY TO LICENSEE—NEGLIGENCE—"LAST CLEAR CHANCE." In an action for the death of a licensee, run down by a switch engine, the doctrine of "last clear chance" has no application where the defendant had no actual knowledge of the probability of injuring the decedent, whose negligence continued up to the moment of the injury and was the proximate cause of his death.

Appeal from a judgment of the superior court for Spokane county, Mitchell, J., entered May 27, 1915, upon granting a nonsuit, dismissing an action for wrongful death. Affirmed.

[1]Reported in 159 Pac. 797.

*Plummer & Lavin*, for appellant.

*Graves, Kizer & Graves*, for respondent.

FULLERTON, J.—Fred S. Scharf was killed by being run over by one of the defendant railway's electric motor engines in its switching yards at Spokane. His widow brings this action to recover, on behalf of herself and his minor heirs, for his death.

The facts as disclosed by the evidence are, in substance, these: Front avenue, one of the streets of the city of Spokane which parallel the switch yard of defendant, was almost impassable for some length of time, and people, under the necessity of passing to and from their homes in that section of the city, had been making use of the switch yard for a thoroughfare. Portions of the yard between the tracks were hard, smooth, and generally dry, affording a good footway, the space between the two main line tracks being twelve feet wide. About two days before the accident in which Scharf was killed, Front avenue had been put in condition for travel, and no necessity existed longer for using the switch yards as a pathway. The defendant, however, had never forbidden the use of its yard to people who sought to cross or travel through it. There were altogether ten tracks in the yard, including the east and west main lines. The main lines are connected by what is known as a cross-over track, the westbound main line being north of the east-bound main line. This cross-over track connecting the two main lines is about one hundred and seventy-five feet long, according to the engineer, but only seventy-eight feet, six inches, according to another witness, who claims to have measured it.

On February 9, 1915, the day of the accident, at about five o'clock in the afternoon, the appellant and her husband, the decedent, were on their way home through the switch yard, the decedent walking between the rails of the east-bound track and appellant upon the outer edges of the ties. There were clear spaces and good paths on each side of the

track upon which the couple could have walked with safety, one of the clear spaces being twelve feet wide. As they entered on the track, they looked for approaching trains or engines, and noticed nothing except a switch engine standing still on the west-bound main line some fifty or sixty feet westward from their point of observation. They continued walking the track at an ordinary gait without giving the engine any further attention, except perhaps to look back at a time before it began to move. The engine noticed by appellant and decedent had stopped on the west-bound main track just beyond the switch for the cross-over track for the purpose of uncoupling and leaving a car. It then took the switch for the cross-over track, stopping long enough to allow the switchman to reset the switch, and then ran down the cross-over track and struck the deceased at the point where the cross-over track unites with the east-bound main line. There was no warning, either by bell, whistle or other signal given to deceased. The headlight was not burning. The day was still light enough to enable persons to be distinguished more than one hundred feet distant. There was evidence that the bells were usually rung on engines moving in the yard, also, that a motor engine in running slowly does not make much noise. This switch engine was a double headed electric motor which could be worked from either end of the cab by shifting the brake valve-handle and the operating lever. At the time of the accident, the engineer was operating the engine from the west end cab, from which place it was impossible for him to see the deceased upon the track to the south of the cross-over track on which he was running. The only employee of respondent who saw the Scharfs was the switchman, who was at the front of the engine on the foot-board. He was then about forty or fifty feet west of the cross-over switch. The Scharfs at that time were walking east along the east-bound main track within from fifty to sixty feet of the place where the accident oc-

curred.   The switchman then passed to the other end of the engine, uncoupled a car, boarded the foot-board of the engine at that end, got off to throw the switch when the engine had stopped for that purpose after passing onto the cross-over track, and again boarded the same foot-board, where he was riding at the time of the accident.   The switchman did not see the Scharfs again after he had noticed them on the east-bound track prior to his change of position on the engine.

At the conclusion of the plaintiff's evidence, defendant moved the court to discharge the jury and render judgment for defendant, upon the ground that the evidence was insufficient to justify a recovery in favor of the plaintiff.   The court sustained the motion and entered judgment according-ly.   The plaintiff appeals, assigning as error the sustain-ing of defendant's challenge to the sufficiency of the evidence, the order discharging the jury, and the entering of judg-ment in favor of defendant.

We think the evidence establishes that the appellant's de-cedent was a naked licensee using the respondent's switch-ing yard by sufferance of the latter, that the respondent was not wantonly or wilfully negligent in occasioning his death, and that his own negligence was the proximate cause thereof. In making use of such a dangerous place as a railway switch-ing yard, decedent owed it to the respondent as well as to himself to exercise the highest degree of care for his own safety.   It was incumbent on him to choose the safer of two paths through the yard which were equally convenient and to make constant use of his sight and hearing.   He did neither.   He selected the middle of a railway track to pursue his way through the yard, while on either side of its rails were paths equally good which he could have traveled in safety.   He saw the switch engine on a parallel track, at the time it had stopped to allow a car to be uncoupled, and thereafter never looked to see whether it was again put in motion, although he knew that it was possible for it to enter

the track on which he was walking. He was run down by the engine without having heard its approach. The presumption necessarily arises that he was not exercising the senses of sight and hearing with which he was endowed. It is true no bell was rung on the engine, but a moving motor car would give warning of its approach to a man not absorbed in other matters than the dangers of his situation. There was nothing to obstruct his view. He knew that the yard was used for the movement of engines and cars, forward and backward. He had no right to lull himself into a sense of security from having seen the only engine in the yard at rest. All the circumstances of the case show negligence on decedent's part continuing up to the moment of death.

We incline to the view that there was some negligence on respondent's part in running its engine without sounding its bell, or having some one, either motorman or switchman, in a position on the engine to keep a forward lookout. But wantonness or wilfulness cannot be imputed to respondent because of its omission of duty in that respect. The motorman had no knowledge of the dangerous situation of decedent. The switchman had noticed him upon the track, but doubtless, if he gave the matter a second thought, assumed naturally that he would get out of the way of the engine, as people in full possession of their faculties of seeing and hearing are accustomed to do. The primary duty was upon decedent to keep out, or get out, of the way of danger, and the operatives of trains have a right to rely on a bare licensee or trespasser so doing.

The proximate cause of decedent's death being his own act of negligence, the respondent is not liable therefor even though it may have contributed thereto in some degree, as the doctrine of comparative negligence does not obtain in this state. The present case is governed by the well-settled rule that a naked licensee or trespasser who is injured upon the tracks or right of way of a railway company can recover for such negligence only as arises from wantonness or wilful-

ness on the part of the railway or its employees. As it is expressed in 3 Elliott, Railroads (2d ed.), §1250

"The better rule is that the licensee takes his license subject to its concomitant perils, and the licensor, as a general rule, owes him no duty except to refrain from wilfully or wantonly injuring him, or to exercise ordinary and reasonable care after discovering him to be in peril."

In 2 Thompson, Negligence (2d ed.), §§ 1713, 1715, it is said:

"This doctrine is that where a trespasser or bare licensee exposes himself to the risk of being run over upon a railway track or in a railway yard, and is killed or injured, there can be no recovery against the railway company unless it is made to appear that the accident was the result of willful misconduct, or of negligence or recklessness so gross as to amount, in theory of law, to willful misconduct."

"It seems entirely plain, from what has preceded, that the failure of the railway company to take special precautions beforehand in anticipation of the presence of trespassers upon the tracks, or in its yards,—as by stationing a lookout, or giving danger signals, or running at a diminished rate of speed, or using care to discover trespassers in positions of danger,—can not be ascribed to it as gross, reckless, wanton or willful negligence within the meaning of the rule under consideration, since the great mass of holdings refuses to impute simple negligence by reason of such acts."

In *Kroeger v. Grays Harbor Construction Co.*, 83 Wash. 68, 145 Pac. 63, we say:

"The rule is that a defendant owes no duty of actual care, while a duty of vigilance or the highest degree of care is put upon one who, for his own purposes, goes upon the premises of another and puts himself in a place of danger."

See, also, *Illinois Central R. Co. v. Eicher*, 202 Ill. 556, 67 N. E. 376; *Cannon v. Cleveland, C. C. & St. L. R. Co.*, 157 Ind. 682, 62 N. E. 8; *Cleveland, C. C. & St. L. R. Co. v. Tartt*, 64 Fed. 823, 99 Fed. 369; *Huff v. Chesapeake & O. R. Co.*, 48 W. Va. 45, 35 S. E. 866; *Spicer v. Chesapeake & O. R. Co.*, 34 W. Va. 514, 12 S. E. 553, 11 L. R. A. 385.

The appellant has cited numerous authorities bearing on the doctrine of "last clear chance," but that doctrine has no application to the present case. It is founded on the duty of a defendant who has knowledge of the dangerous situation in which a person has placed himself to use reasonable care to avoid injuring him, notwithstanding the latter's own negligence has brought him into a place of danger. The doctrine is based on the fact of actual knowledge on defendant's part of the danger to the injured party. Under such circumstances, plaintiff's negligence is regarded as the remote cause, and that of the defendant as the proximate cause of the injury inflicted. As we have seen in this case, the respondent was without knowledge of the probability of injury to the decedent, and the decedent's negligence continued up until the instant of his death. Conceding that respondent might have been negligent, its negligence was merely concurrent with that of the decedent. The contributory negligence of decedent was the proximate cause of his death, inasmuch as his negligence in walking the track without due care had not terminated. It is stated in 29 Cyc. 531:

"This rule [last clear chance] has no application where the negligence of the person injured and of defendant are concurrent, each of which at the very time when the accident occurs contributes to it."

See, also, *Dyerson v. Union Pac. R. Co.*, 74 Kan. 528, 87 Pac. 680, 7 L. R. A. (N. S.) 132; *Smith v. Norfolk & S. R. Co.*, 114 N. C. 728, 19 S. E. 863, 923, 25 L. R. A. 287; *O'Brien v. Washington Water Power Co.*, 79 Wash. 82, 139 Pac. 771; *Kiely v. Seattle Elec. Co.*, 78 Wash. 396, 139 Pac. 197.

In discussing the rule, this court has said:

"It is not intended to permit a recovery in spite of the plaintiff's negligence, but relieves that negligence of its contributory character in cases where, by reason of the defendant having the last clear chance to avoid the injury, his negligence in not using reasonable care to avoid it is the proximate or efficient cause of the injury, while the negligence of

the plaintiff is only a remote cause, condition or incident."
*Herrick v. Washington Water Power Co.*, 75 Wash. 149,
134 Pac. 934, 48 L. R. A. (N. S.) 640.

See, also, *Nicol v. Oregon-Washington R. & Nav. Co.*,
71 Wash. 409, 128 Pac. 628, 43 L. R. A. (N. S.) 174;
*Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A.
1916 A. 943; *O'Brien v. Washington Water Power Co.*, 79
Wash. 82, 139 Pac. 771.

The facts of the present case do not bring it within the
last clear chance rule, but, as we have said, the case falls
within the rule denying recovery to a mere licensee negli-
gently using dangerous premises of another, and injured by
that other without wantonness or wilfulness.

The judgment is affirmed.

HOLCOMB, MAIN, MOUNT, and PARKER, JJ., concur.