[No. 2989-1.    Division One.    December 29, 1975.]

MERELE W. SPELLMEYER, *Appellant*, v. WEYERHAEUSER CORPORATION, ET AL, *Respondents*.

*Thom, Mussehl, Navoni, Hoff & Pierson, Bert H. Weinrich*, and *Thomas R. Dreiling*, for appellant.

*Guttormsen, Scholfield & Stafford* and *Jack P. Scholfield*, for respondents.

SWANSON, J.—Merele W. Spellmeyer, a longshoreman employed by the Port of Longview to assist in moving Weyerhaeuser wood pulp out of port storage facilities for further shipment, relies on theories of negligence and strict liability in seeking to fix liability upon Weyerhaeuser Corporation for personal injuries received when he was struck by bales falling from a disintegrating, 8-bale unit of pulp. This is an appeal from a summary judgment dismissing the action. We affirm as to the theory of strict liability, but reverse and remand for trial on the theory of negligence.

At the time of the accident, it was Weyerhaeuser's practice to ship its wood pulp in units of eight 450-pound bales bound together by a single, flat metal band. Two units of eight bales each, constituting one load, were placed on a pallet board, which provided ease of handling and improved stability for storing and stacking. About 2 months prior to the date of the accident, palletized units of Weyerhaeuser wood pulp bales were loaded on trucks at Weyerhaeuser and transported to shed 13 of the Port of Longview. There, pursuant to the agreement between Weyerhaeuser and the port, longshoremen employed by the port unloaded and stowed the bales without pallets, and the pallets were returned to Weyerhaeuser. The pulp was stacked three loads high, and the tiers were separated by 2-by-4 timbers called "stickers," which maintained a space or gap between each of the three tiers of bales so the forks of a lift truck could be removed and reinserted under each load. As was understood by both Weyerhaeuser and the port, the use of stickers rather than pallets necessitated the employment of "stickermen," whose duties were to place and remove the stickers and assist the forklift operators with stickers whenever the forks would not easily slide beneath a load for pickup.

On the date of the accident, Spellmeyer was working as a stickerman with a Port of Longview longshore crew moving the pulp from shed 13 to the dock. The forklift operator was attempting to insert the forks of the lift truck beneath a load on the second tier when one of the units came apart and bales of pulp fell on Spellmeyer. The evidence showed that the metal band on the involved unit of bales was broken, but it did not establish the specific cause of the break or whether the band parted before or during the insertion of the forks. This particular band was, however, observed to have been loose prior to the attempt to lift the load.

Spellmeyer alleged in his complaint that the bales of pulp fell on him because Weyerhaeuser had "so negligently and carelessly failed to design, assemble, inspect, transport, support and handle said bales of pulp . . ." In its answer Weyerhaeuser denied liability and affirmatively alleged contributory negligence, assumption of the risk, and that the proximate cause was the negligence of a fellow employee, limiting any remedy to the provisions of the Industrial Insurance Act. Before pretrial discovery was completed Weyerhaeuser moved for summary judgment. Spellmeyer then moved to amend his complaint, explaining that it alleged Weyerhaeuser's liability under theories of negligence *and* strict liability, and the purpose of the amendment was "to more fully clarify the theories of law" relied upon.[1] In his amended complaint Spellmeyer alleged that Weyerhaeuser "produced, manufactured, and packaged its product in a defective condition unreasonably dangerous to handlers, said danger being readily foreseeable by [Weyerhaeuser]," that the "defective condition of the baled

[1]Spellmeyer now argues that the trial court erred in considering his strict liability theory because that theory was not included in the pleadings when Weyerhaeuser filed its motion for summary judgment. This contention is not well received in light of the contrary position taken by Spellmeyer in his motion for leave to file an amended complaint. In any case, the strict liability theory was included in Spellmeyer's amended complaint and was properly before the trial court.

wood pulp . . . was not observable by [Spellmeyer] . . . ," and that the "inherently dangerous and defective condition" was created by "Weyerhaeuser's failure to include the specially designed pallet boards with the pulp units" and its failure "to properly unitize the baled wood pulp for handling and storage." After extensive discovery by Spellmeyer and multiple hearings on Weyerhaeuser's motion for summary judgment, the trial court, finding no issues of fact to be resolved, no substantial evidence of breach of a duty owed to Spellmeyer by Weyerhaeuser, and no evidence of any defect in the bands other than pure speculation, dismissed Spellmeyer's complaint with prejudice.[2]

We first consider Spellmeyer's claim that the doctrine of strict liability is applicable to these facts and that the trial court erred in ruling as a matter of law that Weyerhaeuser is not liable under section 402A of Restatement (Second) of Torts (1965), which, as adopted in *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969), provides in pertinent part,

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm thereby caused to the ultimate user or consumer, . . . if
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

■ *Seattle-First Nat'l Bank v. Tabert*, 86 Wn.2d 145, 542 P.2d 774 (1975), which contains the most thorough analysis of section 402A since *Ulmer v. Ford Motor Co.*,

---

[2]The affidavit of Spellmeyer's expert witness, Dale Fietz, filed with his motion for reconsideraton, has not been considered in our disposition of this appeal. The notice of appeal is from the April 1, 1974, order granting summary judgment; consequently the affidavit filed on April 22, 1974, which discusses standards for safe design, is improperly included within the record. *See American Universal Ins. Co. v. Ranson*, 59 Wn.2d 811, 370 P.2d 867 (1962); *Hudesman v. Foley*, 73 Wn.2d 880, 886 n.1, 441 P.2d 532 (1968).

*supra,* makes it clear beyond peradventure that strict liability principles apply equally to defects of design as to those of manufacture, but a careful reading also confirms our conviction that, for other reasons, the doctrine of strict liability does not apply to the facts of this case. Imposition of strict liability is premised on the sound policy consideration that the manufacturer who markets his product for use and consumption by the general public is best able to bear the risk of loss resulting from a defective product. The thrust of section 402A is, accordingly, to protect the "ultimate user or consumer" of the product. Implicit recognition of this principle runs throughout the *Tabert* opinion, where, in setting forth the principles which "best serve the pertinent policies in the balancing of the interests inherent in a strict liability design defect case," the Supreme Court returned again and again to "the reasonable expectations of *the ordinary consumer."* (Italics ours.) *Seattle-First Nat'l Bank v. Tabert, supra* at 154. In the instant case Weyerhaeuser produced and packaged a raw material in an intermediate state, which was stored awaiting shipment to another processor. It did not harm or endanger any "ultimate user or consumer"; only expert loaders and expert carriers were required to deal with it. We therefore conclude that, because of the character of the "product" and the status of the plaintiff, the policy considerations which support imposition of strict liability in other contexts are too severely diluted here and dismissal was correct as to the strict liability theory.

We consider next the trial court's judgment of dismissal as it relates to Spellmeyer's alternative theory of negligent design, which, as we explained in *Palmer v. Massey-Ferguson, Inc.,* 3 Wn. App. 508, 515, 476 P.2d 713 (1970), is but a special application of the general rule stating a manufacturer's duty to refrain from negligent manufacture. Restatement of Torts § 395 (1934), as adopted in Washington by *Dipangrazio v. Salamonsen,* 64 Wn.2d 720, 725, 393 P.2d

936 (1964), and reaffirmed in *Ulmer v. Ford Motor Co.,* *supra,*[3] provides,

> A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured.

Although we have concluded that the risk-spreading application of strict liability is not appropriate in the circumstances presented by this case, we have no doubt that the conduct of a producer or shipper of a commodity such as wood pulp may be measured by standards which respect his exercise of reasonable care. Weyerhaeuser has a duty to exercise reasonable care in designing a package or container which does not involve an unreasonable risk of causing substantial bodily harm to longshoremen who handle its wood pulp in storage or transit.

Weyerhaeuser's duty to use reasonable care in designing its package is bounded by the foreseeable range of danger. "It is for the jury to decide whether a general field of danger should have been anticipated," *Wells v. Vancouver,* 77 Wn.2d 800, 803, 467 P.2d 292 (1970); *Panitz v. Orenge,* 10 Wn. App. 317, 320, 518 P.2d 726 (1973), and whether the injury to Spellmeyer caused by the bales falling on him from the broken package was within such a reasonably foreseeable general field of danger was a question of law for the court only if reasonable minds could not differ in their conclusions, *Wood v. Seattle,* 57 Wn.2d 469, 471, 358 P.2d 140 (1960). Spellmeyer produced evidence from which reasonable minds could conclude that Weyerhaeuser knew and understood the practices employed by the Port of Longview in storing its wood pulp and the risk

---

[3]Our statement in *Palmer v. Massey-Ferguson, Inc., supra* at 515, notwithstanding, the Washington Supreme Court has not adopted the language of Restatement (Second) of Torts § 395 (1965).

of harm to a stickerman assisting a forklift operator in moving the high-piled wood pulp if the packaging devices failed to prevent individual bales from falling from the upper tiers.

But what evidence did Spellmeyer present of a breach of Weyerhaeuser's duty to exercise reasonable care? As the trial court observed, there was no evidence of any defect in the band itself, which could not be identified from among other broken bands in the vicinity. However, deposition testimony was offered which showed that the metal bands sometimes broke or became loose in the course of normal handling procedures, and it was for the trier of fact to determine whether another method should have been utilized to bind the pulp bales more securely together, particularly in light of the decision, in which Weyerhaeuser played a part, to stack the pulp without using the stability-enhancing pallet boards.[4]

■■ Having determined that questions of material fact have been presented as to the range and discharge of Weyerhaeuser's duty to exercise reasonable care in designing its wood pulp "packages," the question remains whether Spellmeyer produced evidence sufficient to permit reasonable

---

[4]Weyerhaeuser argues that its only duty was to warn the port's longshoremen of the existence of hidden dangers and contends that a loose or broken band was not a "hidden" defect because the bands were on the outside of the bales and easily visible to the longshoremen. However, when asked whether the bands ever come completely off the bales, the lead warehouseman for the port said,

Well, they will not go completely. I mean, they will, when they snap off they will pop open, they won't fall off. They won't fall off, but you've already crimped them around, and when you crimp these steel bands, why, they don't have a tendency to fall off. They can slip apart and set there loose and you'll never notice until you pick it up with your fork lift and your load starts to separate, other than you will notice that there is a little slack in the band.

We note in this context that the obvious nature of the peril goes not to excuse the defendant's duty but rather to the issue of the plaintiff's contributory negligence, *Palmer v. Massey-Ferguson, Inc., supra* at 518; *Pike v. Frank G. Hough Co.*, 2 Cal. 3d 465, 467 P.2d 229, 234, 85 Cal. Rptr. 629, 634 (1970), and our reading of *Lyons v. Redding Constr. Co.*, 83 Wn.2d 86, 515 P.2d 821 (1973), leads us to conclude that the defense of assumption of the risk is not properly invoked on these facts.

minds to conclude that "there was a sufficiently close, actual, causal connection between defendant's conduct and the actual damage suffered by plaintiff." *Rikstad v. Holmberg*, 76 Wn.2d 265, 268, 456 P.2d 355 (1969). Weyerhaeuser argues that the cause of Spellmeyer's injury was not the design of the package, but the misuse of the packages of pulp by the forklift operators and Spellmeyer's fellow workers. A jury could reasonably disagree. Although a review of the evidence discloses no direct proof of what caused the bales to fall, "A verdict does not rest on speculation or conjecture when founded on reasonable inferences drawn from circumstantial facts," *Lamphiear v. Skagit Corp.*, 6 Wn. App. 350, 356, 493 P.2d 1018 (1972), and the intervention of independent acts will not break the chain of causation if such independent acts are foreseeable, *Bell v. McMurray*, 5 Wn. App. 207, 212, 486 P.2d 1105 (1971). There is little question that Weyerhaeuser knew of the methods utilized by the port in stacking and unstacking its wood pulp, that the bands sometimes became loose and were broken by the forks of the lift trucks, and that someone was required to work closely with the forklift operator because of the absence of pallet boards. The evidence is sufficient to preserve the question of fact for the jury.

In *Lewis v. Stran Steel Corp.*, 57 Ill. 2d 94, 311 N.E.2d 128 (1974), a case which we find persuasive, a plant employee was injured when a bundle of steel flooring, fabricated by the defendant and sold to the plaintiff's employer, was being transported within the plant on a forklift. When a wheel of the forklift went into a hole in the floor, the bundle tilted and the sheets of steel slid out and struck the plaintiff. The banding on the bundles remained unbroken, but inspection of other bundles revealed that some of the bands were loose. Suit was brought on theories of negligence and strict liability. To the argument that the cause of the injury was not a defect in the packaging, but misuse of the package, the court replied,

> Defendant, as the manufacturer of the steel flooring, is held to the degree of knowledge and skill of experts, and

it was under a duty to so prepare the bundle that it could be transported to the destination where the individual sheets were to be used without exposing others to unreasonable danger. . . . The undisputed evidence shows that the bundle was prepared for shipment so that it could be, and that it was, in fact, moved by both fork lift and overhead crane, and it was reasonably foreseeable that in handling it the bundle would be "tipped." In our opinion, it was reasonably foreseeable, in moving the bundle by fork lift or crane, that if the bundle were to become loose the individual sheets could slide out of the banding, and in order to impose liability it was not necessary that defendant foresee with precision the nature of the occurrence, or the concurrent cause of plaintiff's injury. On this record, on the negligence count, the question of reasonable foreseeability was one for the jury . . .

*Lewis v. Stran Steel Corp.*, *supra* at 101-02.

Likewise in the instant case, whether Weyerhaeuser breached a duty to Spellmeyer, causing the injuries complained of, cannot be answered as a matter of law from the record before us. The question on the motion for summary judgment was not how the trier of fact would resolve these issues, but whether reasonable men might reach different conclusions. *Balise v. Underwood*, 62 Wn.2d 195, 199, 381 P.2d 966 (1963). Spellmeyer is entitled to present his theory of negligent design to the trier of fact.

Reversed and remanded for trial.

WILLIAMS, C.J., and CALLOW, J., concur.

Petition for rehearing denied March 9, 1976.

Review denied by Supreme Court May 25, 1976.