[No. 45005. En Banc. April 24, 1980.]

ELWOOD SEAY, *Appellant,* v. THE CHRYSLER
CORPORATION, *Respondent.*

*J. Richard Manning* and *Paul Culotta* (*Richard P. Wait,* of counsel), for appellant.

*John G. Bergmann* (of *Elvidge, Veblen, Tewell, Bergmann & Thorpe*), for respondent.

*Stephen P. Larson* on behalf of Washington Association of Defense Counsel and *Daniel F. Sullivan* and *Sanford Kinzer* on behalf of Washington State Trial Lawyers Association, amici curiae.

DOLLIVER, J.—This case involves a claim of strict products liability and a defense of contributory negligence. The plaintiff was employed by the Convoy Company in Spokane. He was injured while loading a Dodge truck chassis onto a convoy trailer for eventual delivery to a motor home manufacturer.

The truck chassis (manufactured by defendant Chrysler Corporation) consisted of a frame, engine, wheels, and temporarily attached accelerator, steering, brake and shifting mechanisms as well as a temporary wooden seat. Plaintiff first loaded the top rack of the convoy trailer and then

began to back the chassis onto the lower racks. While backing the chassis with the accelerator pedal slightly depressed, the throttle opened and the chassis suddenly accelerated backwards. Plaintiff was thrown out of the seat and onto the convoy trailer. Plaintiff's evidence indicated that the accelerator linkage mechanism was defective and caused the accident. There was evidence presented by the defendants that the top racks had not been sufficiently raised so that plaintiff was attempting to load a large chassis into too small a space.

The action was submitted to the jury on the theory of strict products liability. Over the objection of plaintiff, the issue of his comparative fault was also submitted to the jury. The jury returned a verdict for plaintiff but also found that 40 percent of his damages could be attributed to his own negligence.

In his appeal, plaintiff raises the issue of (1) whether the comparative negligence statute (RCW 4.22.010) applies in cases of strict products liability so as to reduce his damages. In the cross appeal, defendant Chrysler Corporation raises the issues of (2) whether strict products liability applies in favor of "intermediate handlers", and (3) whether evidence of other accidents involving this type of Dodge chassis was properly admitted. We will consider the issues in that order.

The so–called comparative negligence statute reads:

> Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages *caused by negligence* resulting in death or in injury to person or property, but any damages allowed shall be diminished in proportion to the percentage of negligence attributable to the party recovering.

(Italics ours.) RCW 4.22.010. Although the applicability of this statute to strict products liability has been urged by litigants before this court on previous occasions, we have thus far refused to rule on the question. *See, e.g., Teagle v. Fischer & Porter Co.,* 89 Wn.2d 149, 570 P.2d 438 (1977); *Wenatchee Wenoka Growers Ass'n v. Krack Corp.,* 89

Wn.2d 847, 576 P.2d 388 (1978); *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 588 P.2d 1308 (1978). We have, however, pointed out the theoretical difficulties of comparing concepts of fault (negligence) with no–fault (strict liability) (*Wenatchee Wenoka Growers Ass'n v. Krack Corp., supra*), and, while not closing the door to a positive holding that the contributory negligence of a plaintiff could be a damage–reducing factor in a case of strict products liability, we have given little comfort to defendants that such a theoretical breakthrough will be forthcoming.

Defendants cite a number of scholarly articles and also recent cases, most notably *Pan–Alaska Fisheries, Inc. v. Marine Constr. & Design Co.,* 565 F.2d 1129 (9th Cir. 1977); *Butaud v. Suburban Marine & Sporting Goods, Inc.,* 555 P.2d 42 (Alaska 1976); and *Daly v. General Motors Corp.,* 20 Cal. 3d 725, 575 P.2d 1162, 144 Cal. Rptr. 380 (1978), which merge the concepts of comparative negligence and strict liability and either ignore or rationalize the problem of comparing the former doctrine, which focuses on the conduct of an individual, with the latter, which focuses on the nature of the product and the consumer's reasonable expectation with regard to that product. *See Kinard v. Coats Co.,* 37 Colo. App. 555, 553 P.2d 835 (1976); Levine, *Strict Products Liability and Comparative Negligence: The Collision of Fault and No–Fault,* 14 San Diego L. Rev. 337 (1977).

We need not join in this struggle. While this case was pending appeal, we decided *Albrecht v. Groat,* 91 Wn.2d 257, 588 P.2d 229 (1978), the reasoning of which is applicable here. Although *Albrecht* was concerned with the question of the strict liability of a common carrier, the applicability of RCW 4.22.010 to strict liability was discussed. We pointed out that the statute limited the comparative negligence defense to actions "to recovery damages caused by negligence" and that in *Albrecht* the liability of the carrier was not premised on negligence but on causation alone. *Albrecht,* at 260. Similarly, we have held our "form

of strict liability is based on a *no–fault* concept." *Wenatchee Wenoka,* at 853. Strict liability, imposed because a manufacturer placed a defective and dangerous product into the stream of commerce, does not sound in negligence. Therefore, RCW 4.22.010 does not apply.

There are further reasons for this holding. Comparative negligence is a legislative doctrine. Prior to the enactment of RCW 4.22.010, we had consistently refused to modify the common–law doctrine of contributory negligence. *Franklin v. Engel,* 34 Wash. 480, 76 P. 84 (1904); *Woolf v. Washington Ry. & Nav. Co.,* 37 Wash. 491, 79 P. 997 (1905); *Scharf v. Spokane & I.E. R.R.,* 92 Wash. 561, 159 P. 797 (1916); *See* Henry, *Why Not Comparative Negligence in Washington,* 5 Gonz. L. Rev. 1 (1969); Note, 49 Wash. L. Rev. 705 (1974).

██ Legislative proposals in recent sessions which would have extended the comparative fault doctrine to strict liability actions have failed to become law. Legislative Digest and History of Bills, Forty–fifth Legislature 110, 570 (1977); 1 Legislative Digest and History of Bills, Forty–sixth Legislature 100 (1979). The consideration of the most recent proposal, Engrossed Senate Bill 2333, introduced during the 1979 legislative session, occurred after our opinion in *Albrecht* had been published. We presume the legislature was aware of the refusal of the court in *Albrecht* to extend RCW 4.22.010 to actions founded in strict liability. *State v. Fenter,* 89 Wn.2d 57, 569 P.2d 67 (1977); *Daly v. Chapman,* 85 Wn.2d 780, 539 P.2d 831 (1975). Had the legislature chosen, noting our opinion in *Albrecht,* it could have extended RCW 4.22.010 to strict liability. It did not do so.

██ On the second issue, we believe the defendants misapprehend the import of the sole case upon which they rely, *Spellmeyer v. Weyerhaeuser Corp.,* 14 Wn. App. 642, 544 P.2d 107 (1975). In *Spellmeyer,* the plaintiff was injured by a bale of pulp on which the metal band had broken. He was employed as a longshoreman and was moving the pulp from the shed in which it was stored to the dock. The Court of

Appeals, citing the Restatement (Second) of Torts § 402A (1965), pointed out the bale of pulp was a raw material in an intermediate state and the plaintiff was neither an ultimate user nor a consumer. Here, the Dodge chassis was equipped with a number of temporary instruments and devices. The plaintiff was intended to be, and did become, the ultimate user of those instruments. As a result of a defect in one of them, plaintiff was injured. Plaintiff was an appropriate beneficiary of the doctrine of strict liability. Restatement (Second) of Torts § 402A, comments *o* and *p*, at 356–57 (1965).

 Finally, the admissibility of testimony concerning prior accidents involving similar vehicles is generally left to the discretion of the trial court. E. Cleary, *McCormick on Evidence* § 200, at 473 (2d ed. 1972); *Blood v. Allied Stores Corp.*, 62 Wn.2d 187, 381 P.2d 742 (1963). There appears to have been no abuse of discretion; the evidence was properly admitted.

We reverse the trial court on issue one and affirm on issues two and three.

ROSELLINI, STAFFORD, WRIGHT, HOROWITZ, and WILLIAMS, JJ., concur.

UTTER, C.J. (dissenting)—This case presents the question of the applicability of principles of comparative negligence to actions founded on the doctrine of strict products liability. In recent years, courts in several other jurisdictions applied comparative negligence principles to products liability actions to eliminate the unfairness of "all or nothing" damage awards. *See, e.g., Daly v. General Motors Corp.*, 20 Cal. 3d 725, 575 P.2d 1162, 144 Cal. Rptr. 380 (1978). *Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843 (1978). *See also Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276 (5th Cir. 1975) (applying Mississippi law); *Coons v. Washington Mirror Works, Inc.*, 344 F. Supp. 653 (S.D.N.Y. 1972) (applying New York law); *Butaud v. Suburban Marine & Sporting Goods, Inc.*, 555 P.2d 42 (Alaska

1976); *West v. Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976); *Haney v. International Harvester Co.*, 294 Minn. 375, 201 N.W.2d 140 (1972); *Suter v. San Angelo Foundry & Mach. Co.*, 81 N.J. 150, 406 A.2d 140 (1979); *General Motors Corp. v. Hopkins*, 548 S.W.2d 344 (Tex. 1977); *Franklin v. Badger Ford Truck Sales, Inc.*, 58 Wis. 2d 641, 207 N.W.2d 866 (1973).

The majority refuses to apply comparative fault principles to apportion liability in strict products liability actions because the comparative negligence statute, RCW 4.22.010, applies only to causes of action based on negligence and because it is claimed comparative negligence is a legislative doctrine which should not be modified by this court. Although the majority is correct in stating that the comparative negligence statute is limited to negligence actions, this court may and should apply common–law principles of comparative fault to the judicially created doctrine of strict products liability. *See, e.g., Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969). The New Hampshire Supreme Court was recently confronted with a similar situation. In *Thibault v. Sears, Roebuck & Co.*, *supra*, they held that their negligence statute did not apply to products liability actions but held that comparative principles could be applied by the court to the judicially created doctrine of products liability. We can similarly apply comparative negligence principles to Washington's common–law doctrine of products liability.

The principal objection to adopting a comparative strict liability system is the inevitable collision between fault and no–fault concepts. Levine, *Strict Products Liability and Comparative Negligence: The Collision of Fault and No–Fault*, 14 San Diego L. Rev. 337 (1977). In Washington, legal responsibility in a strict products liability action is determined irrespective of any fault of the plaintiff. *See, e.g., Teagle v. Fischer & Porter Co.*, 89 Wn.2d 149, 570 P.2d 438 (1977); *Seattle–First Nat'l Bank v. Tabert*, 86 Wn.2d 145, 542 P.2d 774 (1975). If strict liability and comparative negligence are merged into a comparative strict liability

system, liability would be determined regardless of the defendant's fault, and the damage award would be reduced if the plaintiff's own negligence was a contributing factor in the injury. This creates conceptual difficulty because the negligence of the defendant is not a factor in determining liability, but the negligence of the plaintiff is a factor that may reduce the amount of the plaintiff's recovery. This difficulty has not prevented the federal admiralty courts from applying comparative negligence principles to nonnegligence situations for more than 80 years. Comment, *Another Citadel Has Fallen—This time the Plaintiff's. California Applies Comparative Negligence to Strict Products Liability,* 6 Pepperdine L. Rev. 485, 496 (1979). Under the maritime doctrine for unseaworthiness, a seaman's negligence causes a reduction in his awarded damages. *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 408–09, 98 L. Ed. 143, 74 S. Ct. 202 (1953). Furthermore, the problems of apportioning liability in products liability actions did not prevent the jury in the present case from determining what percentage the plaintiff's own negligence contributed to his damages. Although the application of comparative principles may not be accomplished with exact measurement, the present "all or nothing" rule is even more imprecise in allocating the burden of loss.

The principal reason why this court should adopt a comparative strict liability system, and why other courts have already adopted such a system, is that it leads to a more just and equitable result than the strict products liability rule that presently exists in Washington. Where the plaintiff, through his own negligence, contributes to his injury, fairness requires us to apportion liability so that the entire burden of loss is not placed upon only one party when two are responsible. The equitable principles supporting strict products liability are more important than the analytical purity of the present "all or nothing" strict products liability doctrine. *See, e.g., Daly v. General Motors Corp., supra.* The adoption of comparative strict products liability would also eliminate the total defense of assumption of risk in

strict products liability actions. Under the present law, if a user or consumer of a defective product discovers a defect in a product and is aware of the danger, but nevertheless proceeds unreasonably to make use of the product and is injured by it, the user or consumer is barred from recovery. *See, e.g., Seattle–First Nat'l Bank v. Tabert, supra.*

If the assumption of risk defense was merged with comparative negligence the plaintiff's award would be reduced only to the extent the plaintiff's negligence was a contributing factor to the injury. The plaintiff would be completely barred from recovery only when the alleged defective product was not a contributing factor.

Comparative negligence principles can be merged with strict products liability without frustrating the goals of strict products liability. One goal of strict products liability is to place the burden of loss caused by a defective product on those that put the product in the stream of commerce rather than on injured persons who are powerless to protect themselves. *See, e.g., Pan–Alaska Fisheries, Inc. v. Marine Constr. & Design Co.,* 565 F.2d 1129 (9th Cir. 1977). The plaintiff's recovery will be reduced only to the extent that the plaintiff's lack of reasonable care contributed to his injury. Manufacturers and those in the chain of distribution would continue to bear the burden of loss where injured persons are powerless to protect themselves and the cost of these injuries would continue to be spread throughout society. Another goal of products liability is to relieve plaintiffs of the problems with the burden of proof inherent in negligence causes of action. *See, e.g., Ulmer v. Ford Motor Co., supra.* In a comparative products liability action the defendant's liability would remain strict; the plaintiff can continue to recover without having to show that the defendant is in any way negligent.

This court has the power to apply comparative principles to the judicially created strict products liability doctrine. Courts have done a similar balancing in admiralty cases for decades. This court should exercise that power because a comparative strict products liability system will lead to

more equitable results than the present system and the comparative system will not frustrate the goals of strict products liability. The trial court should be affirmed.

HICKS, J., concurs with UTTER, C.J.

BRACHTENBACH, J. (concurring with the dissent)—I concur with the result and the reasoning of the dissent, but suggest that there is no conceptual difficulty in merging strict liability with comparative negligence.

To avoid the conceptual difficulty, the comparison can be denominated as comparative fault rather than comparative negligence. *See* Uniform Comparative Fault Act § 1 (promulgated 1977). Although the negligence of a manufacturer's conduct in supplying a defective chattel is not examined under strict products liability, whether the product is defective nevertheless involves a concept of fault. Carestia, *The Interaction of Comparative Negligence and Strict Products Liability—Where Are We?* 47 Ins. Counsel J. 53, 63 (1980). The fault of a manufacturer is measured solely by the characteristics of the product he has produced, rather than his behavior. "Putting out a product that is dangerous to the user or the public . . . involves a measure of fault that can be weighed and compared, even though it is not characterized as negligence." Uniform Comparative Fault Act, comment to § 1.

HICKS, J., concurs with BRACHTENBACH, J.