**WASHINGTON JET, INC., Plaintiff,**

v.

**ROCKWELL INTERNATIONAL CORPORATION, Defendant.**

No. 80 C 1703.

United States District Court, N. D. Illinois, E. D.

Sept. 25, 1981.

George W. Gessler, Terence E. Flynn, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., for plaintiff.

Thomas B. McNeill, Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Washington Jet, Inc. ("Washington Jet") sues Rockwell International Corporation ("Rockwell") alleging that a Rockwell-designed modification to a Rockwell Sabreliner 60 airplane (the "airplane") purchased by Washington Jet was "defective and unreasonably dangerous," causing the Federal Aviation Administration ("FAA") to ground the airplane and requiring Washington Jet to incur "extensive inspection and repair costs." Washington Jet's Complaint comprises two counts, the first seeking relief under the theory of strict liability and the second under negligence. Rockwell has moved for summary judgment on Count I, asserting that Washington Jet "assumed the risk" of the defects and is therefore precluded from obtaining any recovery under strict liability. For the reasons stated in this memorandum opinion and order Rockwell's motion is denied.

### Facts [1]

On December 19, 1979 Washington Jet purchased the airplane from Air Montes, a Bahamian company not a party to this action. Rockwell had manufactured the airplane in 1967. In the summer of 1979 it had allegedly participated with the Raisbeck Group ("Raisbeck") in modifying the wing and stabilizer design of the airplane and all other Sabreliner 60s in operation. That modification is known as the "Mark V" system.[2]

Before buying the airplane Washington Jet examined its maintenance and modification records and in doing so became aware of an extremely recent (December 7, 1979) FAA Emergency Airworthiness Directive (the "1979 AD") that applied to all Sabreliner 60s and any other airplanes modified by Raisbeck. That 1979 AD directed operators of the affected airplanes "to disassemble and inspect the flap tracks within the next 15 flights [in order to] prevent failure of the flap track support structure." Operators were specifically directed to inspect for eight enumerated defects in the presence of an FAA safety inspector and to conduct the inspection in compliance with the disassembly procedure outlined in FAA approved Raisbeck Service Bulletin No. 24.

On January 17, 1980 (some 45 days after the 1979 AD and a month after Washington Jet's purchase) the FAA issued another AD

---

1. This section of the opinion treats with the facts in sufficient detail to provide a background for discussion of the Washington law of assumption of risk (both parties have assumed the applicable law to be that of the State of Washington). Further particulars will be dealt with in the section of the opinion applying the assumption of risk doctrine.

2. For purposes of this motion only Rockwell "assume(s) that a strict liability claim may be brought against Rockwell even though Rockwell did not do the modification installation work that caused the product defect."

444

(the "1980 AD") applicable to Raisbeck-modified airplanes. It stated that "to prevent structural failure of the airframe" all operators were *immediately* required to conduct "a comprehensive inspection of all areas modified by The Raisbeck Group . . . in accordance with Raisbeck Service Bulletin No. 25." Nine possible defects were listed, for the most part duplicating the list contained in the 1979 AD. Inspections were to be conducted at FAA designated facilities. Additionally, a number of subsequent inspections were mandated at intervals determined by each plane's flight hours in service.

Complaint Count I alleges that "[a]s a result of the defective and unreasonably dangerous condition in the design, engineering and installation of the Mark V System, and the component parts of the System, [its] . . . airplane has been grounded by the FAA. The plaintiff has suffered, and will continue to suffer, the loss of the use of the airplane and, in addition, will be required to undergo extensive inspection and repair costs." For purposes of this motion Rockwell has not contested that allegation. Rather it contends that the 1979 AD constituted "actual notice of a significant probable product defect" and that by virtue of its knowledge of the 1979 AD Washington Jet "assumed the risk of any repair or other expenses in connection with the product defect." Accordingly Rockwell argues that under Washington law Rockwell cannot be held liable under Count I, because assumption of risk is a complete defense to strict liability.

### Assumption of Risk Under Washington Law *

■ Given the posture of Washington law in this area, it is especially fitting that the case poses a problem in the distinctive area of plaintiff negligence known as assumption of risk. At least in an earlier era, one paradigmatic case for applying the doctrine was the plaintiff who approached the railroad crossing and failed to heed the "Stop-Look-Listen" sign. Here the Washington Supreme Court's recent cases do not share that fault—they look in *both* directions—and the task is made more difficult by a Washington Court of Appeals decision that appears to look in a third.

In *Teagle v. Fisher & Porter Co.*, 89 Wash.2d 149, 570 P.2d 438 (1977) the Washington Supreme Court ultimately held that the evidence of plaintiff's contributory negligence was insufficient to go to the jury. But in the course of reaching that decision the Court had occasion to comment on precisely the issue raised by Rockwell's motion (570 P.2d at 443) (emphasis added):

> [W]e begin by noting that the Restatement (Second) of Torts provides a general guideline for asserting contributory negligence as a defense in strict liability:
>
> *n. Contributory negligence. . . .* Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product. . . . On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense. . . . If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product . . . he is barred from recovery.

Restatement (Second) of Torts § 402A ["Section 402A"], comment *n* ["Comment *n*"] (1965). . . . Although under Comment *n* a plaintiff would be barred from any recovery if the trier of fact found the

---

\* After this opinion was written the Washington Supreme Court rendered its decision in *South v. A.B. Chance Co.*, 635 P.2d 728 (1981), on certification from the United States District Court for the Western District of Washington. Relying on a recently enacted products liability statute (Chapter 27, Section 8, Laws of 1981) that had not been cited to this Court by counsel, the Supreme Court held in a 7–2 decision that assumption of risk in strict liability cases (such as this one) operates to *reduce* damages and not to bar recovery (as this opinion had held).

plaintiff had voluntarily and unreasonably proceeded to encounter a known danger, *the adoption of comparative negligence in this jurisdiction, see* RCW 4.22.-010, *renders the plaintiff's conduct a damage reducing factor only.*

Just two years before *Teagle,* in *Seattle-First National Bank v. Tabert,* 86 Wash.2d 145, 542 P.2d 774 (1975), the same Court had expressly confirmed its earlier adoption of the strict liability principle of Section 402A and extended it to non-manufacturers in the chain of product distribution. In the course of the *Seattle-First National Bank* opinion it had clearly encompassed Comment *n,* and its provision that assumption of risk was a *complete* defense in strict liability cases, within the scope of the adopted doctrine. 542 P.2d at 779.

*Teagle* thus appeared to have changed Washington law by considering assumption of risk as merely a damage-reducing factor rather than a complete defense. True enough the quotation from *Teagle* is only dictum (the Court there held that the "evidence was certainly insufficient to carry to the jury the issue of whether respondent voluntarily and unreasonably proceeded to encounter a known danger," 570 P.2d at 443, so that no assumption of risk was in fact present). But had this case arisen immediately post-*Teagle* this Court would unquestionably have ruled against Rockwell on its summary judgment motion.

Then last year the Washington Supreme Court changed direction (though it did not in terms reverse *Teagle,* which it characterized as having refused to rule on the specific question before it). In a 6–3 decision in *Seay v. Chrysler Corp.,* 93 Wash.2d 319, 609 P.2d 1382 (1980) it held that the Washington comparative negligence statute dealt only with "damages caused by [a defendant's] negligence" and therefore does *not* apply to strict liability cases. In so doing it emphasized (609 P.2d at 1384):

Comparative negligence is a legislative doctrine. Prior to the enactment of RCW

4.22.010, we had consistently refused to modify the common-law doctrine of contributory negligence....

Legislative proposals in recent sessions which would have extended the comparative fault doctrine to strict liability actions have failed to become law....

Had the legislature chosen, ... it could have extended RCW 4.22.010 to strict liability. It did not do so.

Accordingly this Court views *Seay* as having returned Washington law to its pre-*Teagle* condition so far as the relationship between strict liability and assumption of risk is concerned: the complete defense position articulated in Comment *n,* as approved in *Seattle-First National Bank.* Life is complicated only by a Washington Court of Appeals decision rendered three months after *Seay.* In *Minert v. Harsco Corp.,* 26 Wash.App. 867, 614 P.2d 686, 689 (1980) the Court of Appeals said:

This jurisdiction has eliminated assumption of risk as a defense in a strict tort liability action.

In its footnote in support of that proposition it cited another Court of Appeals opinion—decided between *Teagle* and *Seay* —stating that "the 'assumption of risk' type of contributory negligence" operates only to present the jury with a damage-*reducing* factor. In the same footnote *Minert* referred to the just decided *Seay* case as a *"But see"* decision.

With all respect the *Minert* dictum (that case too was decided on different grounds) is untenable. It relied on a case whose total underpinning was the *Teagle* language quoted earlier in this opinion. That language cannot be viewed as having survived *Seay* for the reason already stated.

Under *Erie v. Tompkins* principles this Court is bound to decide diversity cases much as though it were a trial court in the jurisdiction whose substantive law applies. Whether it adopts the state Supreme-Court-predictive approach or the alternative approach it has described in earlier opinions[3],

---

**3.** See for example the discussion in *National Can Corp. v. Whittaker Corp.,* 505 F.Supp. 147, 148–49 n.2 (N.D.Ill.1981).

it is required to follow the principle announced in *Seay* to the exclusion of the erroneous dictum in *Minert*. This Court therefore holds that under the doctrine announced in *Seattle-First National Bank*, and still viable today, Comment *n* applies with full force to make assumption of risk a *complete defense*.

This conclusion requires examination of the facts presented on Rockwell's motion to see whether assumption of risk has been established beyond material factual dispute. If it has, Washington Jet is barred from recovery on Count I as a matter of law.

### Assumption of Risk Applied

■ Washington Jet's claimed assumption of risk stems from its having examined the 1979 AD before it bought the airplane. Two separate kinds of "risk" are involved in that respect:

(1) Because the 1979 AD expressly required that an inspection be undertaken within the next 15 flights, Washington Jet plainly assumed the risk of the airplane being grounded for the mandated disassembly and inspection—except perhaps to the extent, if any, that the requirement of *immediate* grounding first stated in the 1980 AD might have resulted in some special damage for unanticipated loss of use.[4]

(2) More extended analysis is required to decide whether, by having examined the 1979 AD, Washington Jet also assumed the specific risk that it would be required to undertake the extensive repairs necessary for the airplane to "pass" FAA inspection—in other words that the inspection would reveal the defects of which Washington Jet complains.

As already stated, Comment *n* represents the Washington version of the assumption of risk rule. It defines assumption of risk as the act of

voluntarily and unreasonably proceeding to encounter a known danger. . . . If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds to make use of the product [he or she has "assumed the risk" of the manufacturer's negligence]. . . .

Washington Jet urges, based on the "discovers the defect" language of Comment *n*, that it can be held to have assumed the risk of repair costs only if when it bought the airplane it actually knew the defects existed (as contrasted with knowledge that there was a significant *probability* of their existence). Stated differently Washington Jet essentially seeks to equate assumption of *risk* with assumption of the specific harm sustained.[5]

That argument is untenable. Comment *n* read as a whole certainly does not support Washington Jet's proffered interpretation. Instead the appropriate Comment *n* inquiry is whether the *risk* that the airplane was defective was known to Washington Jet. In other words did Washington Jet "voluntarily and unreasonably proceed . . . to encounter a known *danger*," not a known and certain *injury*. Washington cases support that distinction: They require only that a plaintiff "know the *risk* before it can be assumed," not that it know that injury *necessarily* will be incurred. *See, e. g., Perry v. Seattle School Dist. # 1*, 66 Wash.2d 800, 405 P.2d 589, 594–95 (1965).

Rockwell advances two factors to establish that Washington Jet's purchase with

---

**4.** This Court does not now hold that such special damages would be recoverable. It simply recognizes that possibility. In view of this opinion's disposition of the other risk hereafter discussed, this matter too can be decided as part of the ultimate resolution of contested factual and legal issues.

**5.** Clearly the "discovers the defect" language in Comment *n* is directed at a different target. For example if a person "discovers a defect" in a ladder (a loose rung), under Comment *n* he or she assumes the risk that someone will fall as a consequence of that defect. Such harm may *or may not* result. But had Washington Jet known the alleged defects existed in this case, it would also have known that the harm—expenditure for repairs—would *necessarily* have resulted (there was no chance FAA would have allowed the airplane to fly while the defects were present). Thus the "risk" of harm may be viewed as being present one step earlier—upon discovery that a defect might exist—than in the more usual product defect situation contemplated by Comment *n*.

knowledge of the 1979 AD necessarily assumed the risk of damage:

(1) Raisbeck Service Bulletin No. 24 ("Service Bulletin 24") was designated in the 1979 AD as outlining the required disassembly and inspection procedure. Service Bulletin 24 stated, "Static testing has revealed potential problems associated with the flap support structure" of Mark V modified airplanes, and it identified components of that structure as "suspect."

(2) In support of its motion Rockwell has submitted affidavits of three persons knowledgeable in the aircraft business stating that (a) Emergency ADs are issued "only when it is learned that something is, or likely is, wrong with a type or series of airplane," (b) the 1979 AD was "extraordinary" by virtue of its mere reference to serious workmanship errors and its requirement that an FAA agent be present during inspection and (c) the affiants would not have purchased the airplane in light of the 1979 AD.

At least for summary judgment purposes, each of those factors is inconclusive:

(1) Washington Jet did not examine Service Bulletin 24 before it bought the airplane, so it had no *actual* knowledge of its ominous language. Rockwell argues that Washington Jet cannot claim ignorance of the content of Service Bulletin 24 because it was incorporated by reference into the 1979 AD. But the 1979 AD only refers to Service Bulletin 24; it does not, at least in express terms, incorporate the Bulletin by reference into the AD itself. Though no one may play the ostrich in the face of a clear warning, Rockwell has not demonstrated beyond factual dispute that "incorporation" is implied in ADs generally or in the 1979 AD specifically. In particular Rockwell has failed to show that Washington Jet was necessarily expected to look to the Bulletin for a description of the

severity or likelihood of defects, rather than merely for the procedure to be followed whenever disassembly and inspection became appropriate.

(2) Washington Jet has submitted the affidavit of its former Vice President Guy Cane ("Cane"), directly contradicting the contentions made in the Rockwell affidavits. Cane says that many ADs are issued each year, 90% of which are designated as "Emergency ADs," so that no individual issuance "alerts" interested parties to a probable danger. Cane goes on to say that the content of the 1979 AD was not "extraordinary," especially because he had been assured by Rockwell that "corrective action" pertaining to flap track area problems, if any, was under way. In that respect Washington Jet draws additional support from the fact that the 1979 AD allowed operators to make as many as 15 flights before engaging in the mandated inspection process, putting into dispute Rockwell's claim that the content of the 1979 AD "raised a red flag" as to structural defects.

It is hornbook law that, as stated in *Dreher v. Sielaff*, 636 F.2d 1141, 1143 n.4 (7th Cir. 1980):

> Summary judgment is appropriate only if it appears that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ... and all doubts as to the existence of an issue of material fact must be resolved against the movant.

Cane's affidavit and Washington Jet's not-untenable interpretation of the 1979 AD competently contradict the conclusion Rockwell urges. At least for summary judgment purposes Rockwell's claim that Washington Jet assumed the risk of repair costs (and see also n.4 as to the assumption of the risk of grounding) cannot prevail.[6] Washington Jet has plainly raised material issues of fact as to the meaning, interpretation and necessary implications of the 1979 AD. It cannot be said that as a matter of law

---

6. This Court may not and does not place the parties' respective contentions into the scales

to determine which appears more plausible.

the 1979 AD alerted Washington Jet to the danger of defective design in the airplane so that Washington Jet assumed the risk of any such defect's existence.

### Conclusion

Genuine issues of material fact preclude the entry of summary judgment. Rockwell's motion for that relief is denied.